2014 VT 11

# Loren and Kathryn Hogaboom v. Trevor Jenkins v. Town of Milton

[93 A.3d 131]

No. 12-367

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed February 21, 2014

*Grant C. Rees*, Milton, for Plaintiffs-Appellants.

*Ebenezer Punderson* of *Deppman & Foley, P.C.*, Middlebury, for Defendant-Appellee Jenkins. .

¶ 1. **Robinson, J.** The question in this case is whether a town violated a taxpayer's due process rights by conducting a tax sale of the delinquent taxpayer's real property after registered mail notifying the taxpayer of the impending tax sale was returned undelivered. The Chittenden Superior Court, Civil Division held that it did. We affirm.

¶ 2. We assume the following facts, which are undisputed unless otherwise noted. Appellee taxpayer, Trevor Jenkins, has at all times relevant to these proceedings owned and lived on property at 480 East Road in the Town of Milton. Taxpayer failed to pay property taxes for the 2007-2008 and 2008-2009 tax years. The Town mailed him three delinquent tax notices, in June 2008, June 2009, and January 2010, respectively, advising him to take additional steps to avoid a tax sale.

¶ 3. On March 4, 2010, the Town sent taxpayer a "Tax Sale Notice" indicating that the "Delinquent Tax Collector [had] submitted [taxpayer's] account(s) for tax sale." The notice listed the amount due on his account, including the delinquency itself; interest calculated at a rate of one percent on the delinquency; and other charges not listed on prior notices, including postage, publication, warrant, recording, and over $600 in attorney's fees. The notice included a calculation of interest on the delinquency due through April 6, 2010, with no explanation of the significance

of that date. This notice did not contain information regarding the date or location of the anticipated tax sale.

¶ 4. These notices were sent to taxpayer by first-class mail. Taxpayer denies receiving them, and the Town states that the notices were not returned to the Town.

¶ 5. On March 8, 2010, the Town's attorney sent taxpayer a "Notice of Tax Sale" by registered mail, return receipt requested. This notice did contain details of the tax sale, indicating that the sale would take place on April 6, 2010 and providing the exact time and location. On March 24, 2010, nearly two weeks before the tax sale, the notice sent to taxpayer by registered mail was returned to the Town's attorney unclaimed after two attempts at delivery.

¶ 6. The Town's attorney also recorded notice of the sale in the Town land records, posted notice in the Milton Town Offices, and advertised the sale in the Milton Independent on three nonconsecutive days in March 2010. The Milton Independent is a free weekly publication mailed to Town residents. Taxpayer says that he did not see any of these published notices.

¶ 7. The Town proceeded with the sale and, on April 6, 2010, Loren and Kathryn Hogaboom purchased taxpayer's property at auction with a bid of $5902.20.

¶ 8. On the day following the tax sale, the Town's attorney sent a letter by first-class mail informing taxpayer that his property had been sold in a tax sale, he had one year from the date of sale to redeem the property, and interest would accrue on the purchase amount at a rate of one percent per month. This letter was not returned to the Town's attorney. Taxpayer did not redeem the property during the one-year period, and the Town issued a deed to purchasers on April 26, 2011.

¶ 9. Purchasers filed a complaint for ejectment on July 27, 2011, seeking a writ of possession for the property. Taxpayer admitted his failure to pay taxes but denied ever having received notice of the tax sale. He filed a counterclaim against purchasers and a third-party complaint against the Town, seeking a declaratory judgment setting aside the tax sale as void. Purchasers and the Town both filed motions for summary judgment, contending that notice to taxpayer satisfied the requirements of due process.[1]

---

[1] Purchasers and the Town also argued below that taxpayer's claims were time-barred by the statute of limitations, but have not appealed the trial court's rejection of this argument.

¶ 10. The trial court denied the summary judgment motions, concluding that although the Town complied with the statutory notice requirements of 32 V.S.A. § 5252, the Town failed to provide sufficient notice to taxpayer to satisfy the constitutional requirement of due process. In particular, relying on the U.S. Supreme Court's decision in *Jones v. Flowers*, 547 U.S. 220 (2006), the trial court explained that the Town's failure to take additional steps prior to the tax sale, once the notice of tax sale sent by registered mail was returned unclaimed, rendered its notice to taxpayer insufficient for due process purposes, and that the Town's post-sale, pre-redemption notice did not remedy the constitutional infirmity. Based on this analysis, the trial court entered judgment for taxpayer pursuant to Vermont Rule of Civil Procedure 56(f), declared the tax sale null and void, gave taxpayer thirty days to pay the Town certain principal and interest, and ordered purchasers to deliver a quitclaim deed and property transfer tax return to taxpayer upon payment in full by the Town. Purchasers appealed.

¶ 11. In reviewing a decision granting summary judgment, this Court applies the same standard as the trial court. *White v. Quechee Lakes Landowners' Ass'n*, 170 Vt. 25, 28, 742 A.2d 734, 736 (1999). Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). A court may, after giving notice and a reasonable time to respond, grant summary judgment for a nonmovant, grant a motion for summary judgment on grounds not raised by a party, or consider summary judgment on its own after identifying material facts that may be genuinely in dispute. V.R.C.P. 56(f).

¶ 12. On appeal, purchasers argue that the notice provided by the Town after the auction but before the Town actually transferred the property to purchasers upon expiration of the redemption period, coupled with the delinquency notices previously sent to the taxpayer, were sufficient to satisfy due process. Purchasers contend that the requirement of *Flowers* that a governmental entity take additional steps to provide notice after a mailed notice is returned unclaimed does not apply in this case because the taxpayer here received significantly more notice than the property owner in *Flowers*. Even if *Flowers* applies, purchasers argue that the pivotal action requiring advance notice to taxpayer was not the tax sale itself but, rather, the transfer of title to the purchasers

upon termination of the redemption period. The transfer of title at the end of the redemption period was the relevant deprivation of property, and the notice provided to taxpayer after the sale, but before that transfer, was therefore sufficient to satisfy due process.[2]

¶ 13. Taxpayer responds that the Town's post-sale notice attempts were constitutionally inadequate. He argues that, because the tax sale triggers accrual of one-percent interest on the highest bid, the sale changes a delinquent taxpayer's position to the extent that constitutionally adequate notice is required prior to the sale.

¶ 14. ▪ The principle that a state must provide " 'notice and opportunity for [a] hearing appropriate to the nature of the case' " before depriving a person of life, liberty, or property forms the bedrock of procedural due process. See, e.g., *Jones v. Flowers*, 547 U.S. at 223 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). As the U.S. Supreme Court has noted, due process is "not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quotation omitted). Instead, it is "flexible and calls for such procedural protections as the particular situation demands." *Id.* (quotation omitted). When applying the "cryptic and abstract words of the Due Process Clause" to determine whether notice is constitutionally adequate, the precise form of notice and its content therefore depend on the balancing of the public and private interests involved. *Mullane*, 339 U.S. at 312-14; *Mathews*, 424 U.S. at 333-35.

¶ 15. ▪ Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of [an] action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. Due process does not require actual notice; however, "process which is a mere gesture is not due process." *Id.* at 315; see also *Flowers*, 547 U.S. at 226 (citing *Dusenbery v. United States*, 534 U.S. 161, 170 (2002)). "The means employed must be such as one desirous of actually

---

[2] Purchasers also argue that taxpayer had actual notice of the impending tax sale, or that there is at least a genuine dispute as to whether taxpayer had actual notice such that summary judgment was not appropriate. Because this argument was not raised below, we do not address it here. *Garilli v. Town of Waitsfield*, 2008 VT 91, ¶ 7, 184 Vt. 594, 958 A.2d 1188 (mem.).

informing the absentee might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315.

¶ 16. Nobody suggests that the general procedure required by statute and followed by the Town in this case did not, in the first instance, provide taxpayer notice that was reasonably calculated under the circumstances to apprise him of a pending sale and give him an opportunity to raise objections. The hitch here is that prior to the auction to sell taxpayer's property, subject to his right to redeem, the critical notice — the only one actually confirming that a tax sale had been scheduled, and specifying the date, time and location of that sale — came back to the Town unclaimed.[3]

¶ 17. ■ The U.S. Supreme Court, in *Jones v. Flowers*, addressed the question of what due process requires when notice of a tax sale sent to a property owner is returned undelivered. *Flowers*, 547 U.S. at 223. The central question in this case is whether and how the Court's decision in *Flowers* applies to these facts. In *Flowers*, twice over a two-year period, a taxing authority attempted to notify a delinquent taxpayer of a public tax sale of his property by certified mail that was returned unclaimed. The taxpayer did not reside at the property where the notice was mailed, but his ex-wife did. The taxing authority published notice of a public sale of the property in a local publication and, after no bids were submitted in response to the published notice, sold the property in a private sale. Upon learning of the sale after the redemption period had passed, the taxpayer sued, arguing that the failure to provide notice of the tax sale, and of his right to redeem, resulted in the taking of his property without due process. *Id.* at 224. The Court held that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling [the] property, if it is practicable to do so." *Id.* at 225. The Court acknowledged that due process only requires notice that is reasonably calculated to reach the intended recipient when sent, and does not require that a property owner receive actual notice before the government may sell the owner's

---

[3] The March 8 notice was also the only one that notified taxpayer of his right to request that a portion of his property be sold to satisfy his delinquent tax obligations. Because taxpayer has not raised that issue on appeal, we do not address it here.

property. *Id.* at 226. However, once the government learns that its attempt at notice has failed, it must take the kind of additional reasonable steps that someone "desirous of actually informing" the property owner would take. *Id.* at 230.

¶ 18. ▮ We reject purchasers' argument that the Court's holding in *Flowers* does not apply to this case. Purchasers argue that this case can be distinguished from *Flowers* because taxpayer here resided at the property and, because of the post office's notices of attempted delivery of the registered tax sale notice, received more notice than the taxpayer in *Flowers*. Purchasers essentially argue that the notices of attempted delivery put taxpayer on inquiry notice of the impending sale. In *Flowers*, the U.S. Supreme Court rejected a similar argument that due process was satisfied because the property owner's knowledge of his or her delinquency put the owner on inquiry notice of a pending tax sale. *Id.* at 232-33. Here, the notice on taxpayer's door of an attempted delivery of registered mail did not alert taxpayer to the fact that his property was scheduled for a tax sale and the date, time, and location of that sale. Nor did it notify him of his rights, such as the right to request that only a portion of the property be sold. The facts that taxpayer lived at the property and may have seen the notices of attempted delivery do not meaningfully distinguish this case from *Flowers*. Whether taxpayer actually saw or disregarded the notices is not the issue; the relevant inquiry is whether, from the perspective of the Town, return of the un-claimed registered mail triggered a requirement that the Town take additional steps to notify taxpayer before the tax sale.

¶ 19. Purchasers also suggest that the multiple notices of delinquency the Town sent to taxpayer distinguish this case from *Flowers*. In that case, the government sent only two certified mail notices over a two-year period, both of which were returned unclaimed. The only other notice the taxing authority provided was a posting in a local publication. By contrast, purchasers argue, the Town in this case provided notice of tax delinquency by first-class mail on four occasions prior to the sale. However, the notices sent by first-class mail, which may have been sufficient to notify taxpayer of the *risk* of sale, did not notify taxpayer that an actual sale had been scheduled. Accordingly, we conclude that *Flowers* applies to this case and that the Town was required to take additional reasonable steps once the registered mail notice was returned unclaimed.

¶ 20. Having decided that the Town was required to take additional reasonable steps, we now turn to the question of whether those steps were required prior to the tax sale, or whether the Town's letter to taxpayer *after* the auction, but *before* the end of the redemption period and the actual transfer of the property to purchasers, was sufficient to satisfy the requirement. Purchasers argue that notice of the details of the sale is sufficient if it is provided after the sale but prior to the transfer of title at the end of the statutory redemption period. In so arguing, purchasers rely on our decision in *Ran-Mar, Inc. v. Town of Berlin*, 2006 VT 117, 181 Vt. 26, 912 A.2d 984. In *Ran-Mar, Inc.*, this Court addressed the issue of whether a town may retain proceeds from a tax sale pending redemption. In holding that retention was not an unconstitutional taking, we concluded that a purchaser does not take title and there has been no transfer of property until the end of the one-year redemption period. *Id.* ¶¶ 10, 12. On the basis of this holding, purchasers argue that the actual deprivation of property for which notice is constitutionally required does not occur until the end of the redemption period, so that the Town's notice to taxpayer in this case preceded the deprivation and was thus timely.

¶ 21. Purchasers further rely on a decision of the Arkansas Court of Appeals based on a similar set of facts in *Morris v. LandNPulaski, LLC*, 309 S.W.3d 212 (Ark. Ct. App. 2009). Like here, pre-sale notice in *Morris* was returned unclaimed; the tax collector proceeded with the sale without taking any additional steps to provide the property owner notice. The tax collector then provided the taxpayer post-sale notice via regular mail. The Arkansas Court of Appeals concluded that the post-sale notice was constitutionally adequate because it was sent during the redemption period, "before there had been a deprivation of . . . property." *Id.* at 217. In so holding, the court relied on testimony that " 'nobody's position changes with respect to the property until the remaining redemption period expires.' " *Id.*

¶ 22. The reliance of the court in *Morris* on the fact that nobody changed position immediately following the tax sale in Arkansas is telling. The constitutional question here is whether the government deprived taxpayer of a property interest without sufficient notice. In determining when the relevant deprivation of a property interest occurred here, we consider whether the April 6, 2010 tax sale effected a sufficient change in taxpayer's property

rights to require additional notice prior to the sale after the notice of tax sale was returned undelivered.

¶ 23. ▇ Under Vermont's statutory scheme, a tax sale has some implications for a delinquent taxpayer's property rights wholly apart from the eventual transfer of title to the property upon expiration of the redemption period. Vermont law provides that for one year following a tax sale, a property owner may redeem the property by paying "the sum for which the land was sold" in addition to interest on that amount at the rate of one percent per month. 32 V.S.A. § 5260. The tax sale price can include not only the total delinquent taxes and the interest owed on those taxes, but also collector's fees, including the cost of travel and expenses to carry out the sale; attorney's fees and costs; interest; and various other fees. 32 V.S.A. § 5258; *Westine v. Whitcomb, Clark & Moeser*, 150 Vt. 9, 12, 547 A.2d 1349, 1351 (1988); see also *Ran-Mar, Inc.*, 2006 VT 117, ¶ 8 (concluding that fees, including those mischaracterized as penalties by the taxing authority, are "explicitly collectible by tax sale under § 5254(a)"). The attorney's fees that may be assessed against the taxpayer can amount to up to fifteen percent of the total uncollected tax. 32 V.S.A. § 5258.

¶ 24. ▇ ▇ On the one hand, taxpayer's liability for his delinquent taxes, interest on those delinquent taxes, various collector's fees, and even attorney's fees do not change at the time of the tax sale. In this case, the delinquency, and the interest that had accrued on the delinquency, existed before the sale, and taxpayer's obligation to pay them in order to redeem and retain his property persisted after the sale until the expiration of the redemption period. By the same token, the tax collector's authority to assess additional fees, including attorney's fees up to fifteen percent of the uncollected taxes, begins when the tax collector records the warrant and levy for delinquent taxes — an event that precedes the actual tax sale. 32 V.S.A. § 5258. The taxpayer's obligation to pay these fees in order to keep his property likewise did not change at the time of the tax sale; once the tax collector recorded the warrant and levy, the taxpayer had to pay these costs in order to avoid a tax sale, and also had to pay these costs, which were folded into the tax sale price, in order to redeem.

¶ 25. ▇ On the other hand, the base on which the one-percent interest charged to taxpayer is assessed *does* change at the time of the tax sale. Following the tax sale, a taxpayer seeking to

redeem property is liable for interest at the rate of one percent not only on the delinquency itself, but on the sum of the delinquency, accrued interest through the date of sale, various collector's fees, and attorney's fees. The tax sale itself increases the base against which interest is assessed.[4]

¶ 26. ■ In light of this fact, the tax sale is not an arbitrary line in the sand; it brings about substantial and previously nonexistent obligations for a taxpayer seeking to redeem his or her property — a sufficient change in the taxpayer's property rights to trigger the due process notice requirement. We recognize that the dollar value of the additional interest payable by a taxpayer seeking to redeem property on account of the increased base against which the interest is assessed may in some cases be modest. But the corresponding requirements of due process are likewise limited. See *Mullane*, 339 U.S. at 313-14 (balancing individual interest sought to be protected by due process and government's interest in determining extent of notice requirement in particular circumstances).

¶ 27. ■ ■ We conclude that once notice of a tax sale is returned unclaimed, a town must take additional reasonable steps to apprise the taxpayer of the impending tax sale before the sale occurs. This notice must be more than a "mere gesture" and must be reasonably calculated to provide the taxpayer notice of the impending sale. This holding need not empower delinquent tax-payers to avoid tax sales by refusing receipt of registered mail. The U.S. Supreme Court in *Flowers* identified a number of reasonable steps to provide notice that could not be defeated by an intransigent taxpayer, including resending notice by regular mail, posting notice on the taxpayer's front door, or addressing otherwise undeliverable mail to "occupant." *Flowers*, 547 U.S. at 234-35. Service by sheriff is also a reasonable and cost-effective option to ensure that a property owner is not deprived of property

---

[4] Although not at issue in this case, there are other reasons to exercise caution in condoning post-sale but pre-redemption notice in satisfaction of due process requirements in the tax sale context. For instance, the tax sale forfeits a taxpayer's statutory right to request that only a portion of the property be sold to satisfy the debt. See 32 V.S.A. § 5254(b). We need not determine what other property rights of the taxpayer are impacted by the tax sale, prior to redemption or expiration of the redemption period, because we conclude that the assessment of increased costs to the taxpayer seeking to keep the property is a sufficient deprivation of property to require due process notice.

without adequate notice.[5] The burden on the Town in this case to take one of these additional steps in the nearly two weeks between the time the registered notice was returned and the tax sale was slight.

¶ 28. Purchasers argue that the superior court's decision elevated form over substance. In the due process context, when we are talking about divesting an individual of property, and in some cases home and hearth, the form and adequacy of notice is not a trivial concern.

*Affirmed.*

---

[5] As the trial court noted below, the notice to a delinquent taxpayer required by 32 V.S.A. § 5252(3) prior to a tax sale of that individual's property, and provided by the Town here, would not have supported a small claims judgment for $100. See V.R.S.C.P. 3(b) (requiring personal service in small claims action if defendant does not acknowledge receipt of mailed summons and complaint).