REIBER, C.J.
¶ 1. Petitioner-a former instructional aid and soccer coach at Springfield High School-seeks to challenge his placement on the Child Protection Registry. The Department for Children and Families (DCF) placed petitioner on the Registry in December *787 2010 after substantiating that he had solicited, groomed, and sexually abused a sixteen-year-old Springfield High School student at his home during the fall 2009 semester. Petitioner appealed this substantiation to the Human Services Board, but the Board dismissed the appeal because it was untimely filed and because petitioner did not demonstrate good cause for the untimely filing. Petitioner now argues that (1) the Board incorrectly applied the excusable neglect standard rather than the good cause standard when it assessed whether he could proceed with his appeal despite its untimely filing; and (2) the trial court's acceptance of his no contest plea for contributing to the delinquency of a minor-which has no sexual act requirement-acts as a collateral estoppel against a substantiation that he sexually abused the student. We affirm.
¶ 2. Petitioner was employed as an instructional aid and soccer coach at Springfield High School until he moved to California in December 2009. In May 2010, DCF opened an investigation into a report that petitioner coerced a sixteen-year-old female student at the school to have sexual intercourse with him at his home on November 6, 2009. Petitioner was thirty-seven years old at the time of the alleged sexual intercourse. On November 23, 2010, DCF sent petitioner a letter entitled "Notice of Substantiation and Intent to Place Name on Registry."[1] The letter informed petitioner, "Based on the information we gathered, we have determined that a reasonable person would conclude that you did sexually abuse this child." The letter went on to explain that petitioner had until December 9, 2010, to request a review of this substantiation, and, if he did not request a review by that date, he would be placed on the Child Protection Registry as a Level One offender.[2]
¶ 3. On the same day that DCF sent petitioner the substantiation letter, the State criminally charged petitioner with sexual exploitation of a minor in violation of 13 V.S.A. § 3258. That statute prohibits a person from "engag [ing] in a sexual act with a minor" if the person is "at least 48 months older than the minor" and "in a position of power, authority, or supervision over the minor by virtue of ... undertaking the responsibility, professionally or voluntarily, to provide for the health or welfare of minors, or guidance, leadership, instruction, or organized recreational activities for minors." Id. The court released petitioner on bail but required him to surrender his Vermont educator license. On December 9, 2010, petitioner requested that DCF review its substantiation and also stay the review pending the conclusion *788 of his criminal case. DCF responded by letter the following week, informing petitioner that it had stayed its review of the substantiation but had placed his name on the Registry in the meantime.
¶ 4. In January 2011, the State amended its charge against petitioner to contributing to the delinquency of a minor in violation of 13 V.S.A. § 1301. That statute reads, "A person who causes, encourages, or contributes to the delinquency of a minor shall be imprisoned not more than two years or fined not more than $2,000.00, or both." Id. Petitioner pleaded no contest to the amended charge in November 2011. The court accepted his plea, entered an adjudication of guilty, and sentenced petitioner to a $500 fine. In doing so, the court specifically noted that the plea was "voluntary and made with knowledge and understanding of the consequences and after a knowing waiver of constitutional rights." And it further noted, "Plea found to have a factual basis."
¶ 5. Petitioner's attorney died in November 2012 without renewing a request for review of petitioner's substantiation with DCF, despite the fact that petitioner's criminal case concluded a year before. Petitioner attempted to restore his Vermont educator license in mid-2013 through the state Department of Education but was unsuccessful; he was subsequently informed by DCF that he was still listed on the Registry. In September 2013, he wrote to DCF explaining that he was "wrongly accused of an accusation in 2010," that he was "not convicted," and that he was "unaware" that he was still listed on the Registry. In October 2013, DCF responded that it had begun the process of reviewing the substantiation but that petitioner would not be eligible to request expungement of his name from the Registry until November 22, 2017.
¶ 6. In January 2014, DCF held a telephone conference to review petitioner's substantiation. Petitioner was self-represented during this conference. After the conference, DCF sent petitioner a letter upholding both the substantiation and petitioner's placement on the Registry. Referring to the November 2010 substantiation, the letter began by explaining that DCF had previously determined that petitioner had "solicited and groomed" the student through "extensive electronic contact," including phone calls, text messaging, and Facebook correspondence, and had engaged in "forceful sexual intercourse" with the student at his home. It then stated that the substantiation indicated that the report was "based upon accurate and reliable information that would lead a reasonable person to believe that the child has been abused or neglected." It went on to acknowledge petitioner's claims during the telephone conference: petitioner "never had any other issues or accusations made against" him; the student "has extensive issues with her mental stability and with lying"; the student "was a student at [his] school but was not [his] student"; and he "reached out" to the student only because he "knew [her] father from going to high school together."
¶ 7. But DCF ultimately determined that the student's recounting of events was more credible than petitioner's and upheld the substantiation on that basis. The letter noted that the student disclosed her allegations "several months after the sexual abuse incidents, without leading or prompting" and "offered extensive and particular details describing several rooms of [petitioner's] home," and there was nothing to indicate that the student "had any motivation to make false accusations." Petitioner's recounting of events, on the other hand, was "inconsistent with the factual documentation, minimized [his] actions, and lacked overall credibility and *789 accountability." DCF further explained that these concerns were particularly relevant in light of petitioner's no contest plea to the criminal charge of contributing to the delinquency of a minor. The letter concluded by informing petitioner that he had thirty days to appeal to the Human Services Board if he wished to appeal the decision further.
¶ 8. Petitioner did not appeal within thirty days. Instead, in March 2015-thirteen months later-petitioner retained counsel and requested a second DCF review of the substantiation. The letter requesting this second review pointed out that 33 V.S.A. § 4916a -the statute detailing the process for appealing substantiations to the DCF Commissioner-allows DCF to waive the normal appeals deadline. The letter then focused on petitioner's no contest plea for contributing to the delinquency of a minor and argued that the court's acceptance of that plea was proof that he had not sexually abused the student. Petitioner's letter stated that "a plea to a misdemeanor offense, that does not include any sexual activity as an element of proof, constitutes the equivalent of an acquittal or dismissal of the criminal charge that would have otherwise justified [petitioner's] designation as a sexual offender." It further suggested that DCF should have reviewed the substantiation after the court accepted petitioner's no contest plea but had not done so, presumably because petitioner's attorney died before bringing the plea to DCF's attention.
¶ 9. The next month, DCF sent petitioner a letter denying his request for a second review. It explained not only that 33 V.S.A. § 4916a"does not provide a second opportunity for [petitioner] to challenge his placement on the Registry," but also that petitioner's classification as a Level One offender was "consistent" with DCF policy because petitioner "engaged in sexual intercourse with a student at the same school." The letter noted the DCF policy that a Level One classification is appropriate "when the substantiation of a person responsible for a child's welfare involves substantial child endangerment, there are court adjudications for related conduct; or there is a high risk of future harm based on the assessment of risk." Seemingly referring to petitioner's no contest plea, the letter further stated that "there was a court adjudication for the same conduct in a criminal case," but it confusingly concluded that "[t]he disposition of the criminal case has no bearing on DCF's substantiation." In May 2015, petitioner sent a final letter to DCF, again requesting a second review, and DCF responded "any further right of review of his substantiation is no longer available" and there is "no purpose served in any further discussion" of petitioner's substantiation.
¶ 10. In August 2015, having exhausted his remedies through DCF, petitioner appealed the substantiation to the Human Services Board. Because his appeal fell outside of the statutory time limit for appeals, petitioner requested that the Board waive the filing deadline for good cause under 33 V.S.A. § 4916b(d) and review the substantiation. The Board docketed petitioner's appeal and held a status conference in October 2015. The parties did not address the untimely filing at this conference; instead, DCF argued that the court's acceptance of petitioner's no contest plea acted as a collateral estoppel that requires the Board to find a substantiation of child abuse.
¶ 11. DCF expounded on this argument in a December 2015 motion for summary judgment. Contending that petitioner "adopted the criminal affidavit as the factual basis for his plea, and the court adopted that admission of those facts as the basis for finding a factual basis for the *790 conviction," DCF argued that "[p]etitioner is therefore estopped from re-litigating those same facts." Petitioner responded with an opposing memorandum in which he argued that "DCF's motion does not provide any basis to indicate that [the] arrest affidavit was used as the factual basis for the plea." He further argued that when he pleaded no contest to contributing to the delinquency of a minor, petitioner "was only acknowledging that he did not deny the essential elements of the charge to which he entered a plea." Therefore, he concluded, the court's acceptance of the plea "should be relevant in the Board's review if only for the unequivocal fact that the Petitioner has never been adjudicated guilty of any sexual act."
¶ 12. In February 2016, the Board's hearing officer held a status conference on the issue of petitioner's untimely filing of his appeal to the Board. Petitioner noted that his letter requesting an appeal before the Board had conceded that the appeal was untimely and that he had requested that the Board waive the filing deadline for good cause. Moreover, he argued that DCF's failure to raise the issue of the untimely filing acted as an assent to the Board reviewing the substantiation. Apparently unconvinced, the hearing officer instructed petitioner to file a formal motion to waive the filing deadline, along with evidence showing that the appeal was untimely for good cause. Petitioner then filed the requested motion, DCF filed its own motion in opposition, and petitioner filed another supporting motion. The Board then weighed the merits of these motions in a July 2016 order, finding that "[t]he decisions made by the petitioner to proceed without an attorney, to neglect to file an appeal, and to wait for more than a year to take any further action were all within his control" so the appeal "cannot be found to be out-of-time for 'good cause.' " It therefore dismissed petitioner's appeal for lack of jurisdiction.
¶ 13. Appealing to this Court, petitioner now argues that (1) the Board incorrectly applied the excusable neglect standard rather than the good cause standard when it assessed whether he could proceed with his appeal despite its untimely filing and (2) the court's acceptance of his no contest plea acts as a collateral estoppel against a substantiation of child abuse. We disagree with both arguments. We therefore affirm not only the Board's denial of petitioner's appeal but also his substantiation and placement on the Registry.
I.
¶ 14. We first address petitioner's argument that the Board incorrectly applied the excusable neglect standard rather than the required good cause standard when it assessed whether he could proceed with his appeal despite its untimely filing. According to petitioner, the two standards are substantively different and apply in entirely different circumstances. He argues that the excusable neglect standard focuses on procedure and is used for determining whether an offender on the Registry had a valid reason for failing to meet the *791 appeals deadline, whereas the good cause standard focuses on the substance of the underlying case and is used for determining whether the Board should accept an appeal, even though the offender at issue did not have a valid reason for failing to meet the appeals deadline. The Board, petitioner claims, erred by examining whether he had a valid reason for failing to meet the appeals deadline rather than examining whether the substance of his underlying case merited the Board accepting his untimely appeal. This argument is particularly relevant in light of the fact that petitioner acknowledges that he does not have a valid reason for failing to meet the appeals deadline; at oral argument, petitioner's attorney specifically emphasized that "there is no good cause for delay" and "there is no excuse for [petitioner's] delay, which is why there is no claim that what occurred here was an act that was an excuse for neglect."
¶ 15. Before directly addressing the meaning of the term "good cause," we note the statutes detailing the processes by which a person can appeal a substantiation and thus his or her placement on the Registry. A person has two methods of appeal. He or she can appeal either to the DCF Commissioner or to the Human Services Board, and the statutes detailing these two methods are very similar. Compare 33 V.S.A. § 4916a with 33 V.S.A. § 4916b. Moreover, because petitioner appealed his substantiation both to the DCF Commissioner and to the Board, both methods are implicated in this appeal. Nevertheless, because petitioner challenges only the Board's refusal to accept his appeal-rather than DCF's refusal to review his substantiation a second time-only the statute regarding Board appeals is directly relevant to the appeal before this Court.
¶ 16. The process for appeals to the DCF Commissioner is detailed in 33 V.S.A. § 4916a. An offender may request a review "by notifying the Department within 14 days of the date the Department mailed notice of the right to review." Id. § 4916a(c)(1). However, "[t]he Commissioner may grant an extension past the 14-day period for good cause, not to exceed 28 days after the Department has mailed notice of the right to review."Id. Also, the review may be stayed "if there is a related case pending in the Criminal or Family Division of the Superior Court which arose out of the same incident of abuse or neglect for which the person was substantiated." Id. § 4916a(c)(2). The person's name "shall be placed on the Registry" while the review period is stayed. Id. Upon resolution of the court case, the person has thirty days to request review. If the person does not meet this deadline, "the Department's decision shall become final and no further review under this subsection is required." Id.
¶ 17. Moreover, even if the person never requested an administrative review, the Commissioner may later grant a waiver for good cause and allow review. In this context, "good cause" specifically includes "an acquittal or dismissal of a criminal charge arising from the incident of abuse or neglect":
If no administrative review is requested, the Department's decision in the case shall be final, and the person shall have no further right of review under this section. The Commissioner may grant a waiver and permit such a review upon good cause shown. Good cause may include an acquittal or dismissal of a criminal charge arising from the incident of abuse or neglect.
Id. § 4916a(k).
¶ 18. The process for appeals to the Board is detailed in 33 V.S.A. § 4916b. That section explains that a person "may apply in writing" to the Board "[w]ithin 30 days of the date on which the [DCF] reviewer mailed notice of placement of a report on the Registry." Id. § 4916b(a). The Board must then hold a hearing "within 60 days of the receipt of the request for a hearing." Id. § 4916b(b)(1). Importantly-unlike 33 V.S.A. § 4916a - 33 V.S.A. § 4916b specifies that the Board shall consider court convictions and adjudications as "competent evidence." Id. § 4916b(b)(4) ("Convictions and adjudications which arose out of the same incident of abuse or neglect for which the person was substantiated, whether by verdict, by judgment, or by a plea of any type, including a plea resulting in a deferred sentence, shall be *792 competent evidence in a hearing held under this subchapter.").
¶ 19. Section 4916b has a subsection that is analogous to the § 4916a subsection allowing administrative review for good cause. Interpreting this subsection is the central issue in petitioner's appeal before this Court. It reads:
If no review by the Board is requested, the Department's decision in the case shall be final, and the person shall have no further right for review under this section. The Board may grant a waiver and permit such a review upon good cause shown.
Id. § 4916b(d). However, although this subsection is effectively identical to the first two sentences of § 4916a(k), it has no further explanation analogous to the § 4916a(k) explanation that "[g]ood cause may include an acquittal or dismissal of a criminal charge arising from the incident of abuse or neglect." Id. § 4916a(k). Indeed, this subsection leaves "good cause" entirely unexplained. We must therefore determine in which context good cause applies: does the standard focus on whether the offender at issue had a valid reason for failing to meet the appeals deadline? Or-as petitioner argues-does it instead focus on the substance of the underlying case and whether the Board should accept an appeal, even though the offender did not have a valid reason for failing to meet the appeals deadline?
¶ 20. We hold that the good cause standard is applied when determining whether the offender at issue had a valid reason for failing to meet the appeals deadline; in other words, it does not pertain to the substance of the underlying case but rather to the reasons why the offender did not meet the appeals deadline. We come to this holding first by looking to Vermont Rule of Appellate Procedure 4(d), which also allows for exceptions to filing deadlines in the court context. That section reads: "The superior court may extend the time for filing the notice of appeal if ... the party shows excusable neglect or good cause." V.R.A.P. 4(d)(B). Rule 4(d) was amended in 2006 to adopt the language of Federal Rule of Appellate Procedure 4(a)(5). Reporter's Notes-2006 Amendment, V.R.A.P. 4. The Reporter's Notes to the rule clarify that "[g]ood cause refers to situations in which there is no fault on the movant's part" and give the example of "failure of the Postal Service to deliver the notice of appeal." Id. Meanwhile, "[e]xcusable neglect assumes fault on the part of the movant." Id. Neither standard makes any mention of the substance of the underlying case. Instead, both refer to the reasons why an appeal was not made in a timely manner. It is therefore clear that neither standard pertains to the substance of the underlying case but rather to whether the moving party had a valid reason for failing to meet the appeals deadline.
¶ 21. Moreover, the Board properly applied the good cause standard; petitioner's failure to appeal his substantiation to the Board in a timely manner was due to factors entirely within his control. Simply put, petitioner failed to timely appeal DCF's review of his substantiation for eighteen months before finally seeking Board review, and he did so without any external interference. As his counsel conceded, the responsibility for this untimely filing lies entirely with petitioner. The Board therefore properly found that there was no good cause warranting its acceptance of his appeal despite the untimely filing and that it likewise had no jurisdiction. See In re Beer, 2010 VT 31, ¶ 11, 187 Vt. 641, 996 A.2d 225 (mem.) ("The Board was correct in holding that petitioner's failure to file a timely appeal deprived the Board of jurisdiction ....").
*793 II.
¶ 22. We next address petitioner's argument that the court's acceptance of his no contest plea acts as a collateral estoppel against a substantiation of child abuse. Here, petitioner focuses on the fact that he was never convicted of the State's original criminal charge of sexual exploitation of a minor in violation of 13 V.S.A. § 3258, which prohibits people in "position [s] of power, authority, or supervision" over minors from engaging in sexual acts with those minors. Instead, he was convicted of contributing to the delinquency of a minor, a misdemeanor that does not have a sexual act requirement. See id. § 1301. Petitioner argues that the court's acceptance of his no contest plea for this crime means that the court necessarily found that he did not engage in a sexual act. He further argues that this alleged finding in turn collaterally estops DCF and the Board from finding that he did engage in a sexual act with the student. The logical extension of this reasoning, petitioner argues, is that a Level One classification is too severe for his behavior with the student; the no contest plea "should have resulted in his being listed on the Registry as a Level Two offender, at most."
¶ 23. We wholly disagree with this line of reasoning. Simply put, the court's acceptance of petitioner's no contest plea for contributing to the delinquency of a minor was not an adjudication of the original charge of sexual exploitation of a minor. Indeed, there is no adjudication whatsoever on the original charge-whether under the standard of beyond a reasonable doubt or under any other standard-that can serve as the basis of collateral estoppel against a substantiation of child abuse. Cf. Alpine Haven Prop. Owners Ass'n v. Deptula, 2003 VT 51, ¶ 13, 175 Vt. 559, 830 A.2d 78 (mem.) ("Collateral estoppel, or issue preclusion, bars the subsequent relitigation of an issue that was actually litigated and decided in a prior case where that issue was necessary to the resolution of the dispute."). That original charge was not dismissed on the merits by the court and there was not an acquittal on it. Instead, the State chose to amend its charge against petitioner and did so for some unknowable reason. This was the State's prerogative. There may be many reasons why it did this and many of those reasons may have absolutely nothing to do with the merits of that charge. For these reasons, this situation does not present any issue of collateral estoppel, so we do not address petitioner's ultimate argument that a Level One classification is too severe for his behavior with the student.
Affirmed.

According to DCF's regulations, the terms "substantiation" and "substantiated report" are synonymous. They mean that "the [DCF] commissioner or the commissioner's designee has determined after investigation that a report is based upon accurate and reliable information that would lead a reasonable person to believe that the child has been abused or neglected." Child Protection Registry § 8001(7), Code of Vermont Rules 13 172 800, http://www.lexisnexis.com/hottopics/codeofvtrules [hereinafter DCF Rules].

Each substantiation on the Registry is classified according to one of two levels intended to identify the risk of future harm to children. A Level One classification is more serious than a Level Two classification. A Level One classification is appropriate if the substantiation "involves substantial child endangerment"; "there are court adjudications for related conduct"; or "there is a high risk of future harm based on the assessment of risk." DCF Rules § 8005(1). A Level Two classification is appropriate for all other substantiations. DCF Rules § 8006. Moreover, a Level One offender may apply for expungement of his or her name from the Registry after seven years, whereas a Level Two offender may apply for expungement after just three years. DCF Rules §§ 8007.01, 8007.02.