NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 6

No. 24-AP-128

In re Appeal of M.R.

Supreme Court

On Appeal from
Human Services Board

October Term, 2024

Michael J. Donohue, Chair

Matthew Valerio, Defender General, and Kerrie Johnson, Appellate Defender, Montpelier, for
 Appellant.

Charity R. Clark, Attorney General, and Ryan P. Kane, Deputy Solicitor General, Montpelier, for
 Appellee Department for Children and Families.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.    **EATON, J.**  Petitioner, M.R., was a minor when the Department of Children and Families (DCF) substantiated him for sexual abuse of a child. DCF sent the notice of the substantiation decision to M.R.'s father, but not directly to M.R. Father requested, but did not participate in, an administrative review which upheld the substantiation. Thereafter, M.R. did not seek a second review of his substantiation from the Human Services Board until after the appeal period expired. The Board dismissed M.R.'s appeal as untimely. On appeal to this Court, M.R. contends that the Board should hear his substantiation appeal because he was entitled to personal notice under the applicable statute, he was deprived of due process by lack of direct notice, and there was good cause for his delay in filing the appeal. We affirm.

## I. Legal Framework

¶ 2.    Some background on the applicable statutes is helpful to understanding the issues on appeal.  Upon receiving a report of abuse or neglect, DCF must promptly assess the report and, "[i]f the report is accepted as a valid allegation of abuse or neglect," DCF must conduct either an assessment or investigation.  33 V.S.A. § 4915(a)-(b) (2021).  If DCF determines through investigation that a report "is based upon accurate and reliable information that would lead a reasonable person to believe that [a] child has been abused or neglected," the report is considered "[s]ubstantiated."  Id. § 4912(16).[1]  DCF maintains a "Child Protection Registry that . . . contain[s] a record of all investigations that have resulted in a substantiated report."  Id. § 4916(a)(1).  DCF may disclose a particular Registry record in certain specific situations, including to an employer that provides care for children and vulnerable adults.  See id. § 4919(a)(3).

¶ 3.    Notice of a substantiated report is governed by two separate sections of Title 33.  Section 4916a(a) states that, following a substantiation, DCF must "notify the person alleged to have abused or neglected a child" of the "nature of the substantiation decision."  However, § 4916e specifies that when the "person alleged to have abused or neglected a child is a minor, any notice required pursuant to this subchapter shall be sent . . . to the minor's parents or guardian," or if the child is in DCF custody, "to the social worker assigned to the child . . . and the child's counsel of record."  Id. § 4916e(1)-(2).

¶ 4.    The statutory framework provides two levels of review from a substantiation determination.  Following the initial determination, DCF must send notice of "the right to request a review of the substantiation determination by an administrative reviewer."  Id. § 4916a(a)(4).  A review of that determination may be sought "by notifying the Department within 14 days of the

---

[1]  At the time of M.R.'s acts, substantiation was based on a reasonable-person standard. The statute was amended in 2024 to require proof by a preponderance of the evidence.  2023, No. 154 (Adj. Sess.), § 3.  All citations in this opinion describe the process as it existed at the time of M.R.'s appeal in 2021.

date the Department mailed notice of the right to review." Id. § 4916a(c)(1). If a review is requested, DCF holds an administrative-review conference that affords an opportunity to present evidence or other information supporting the substantiated individual's position. Id. § 4916a(e).

¶ 5. If the reviewer upholds the substantiation determination, the reviewer provides notice of that decision and the right to appeal to the Human Services Board. Id. § 4916a(i). To initiate this appeal, an application for a fair hearing must be made in writing to the Board "[w]ithin 30 days after the date" when the administrative reviewer sent notice. Id. § 4916b(a). The Board is required to hold a fair hearing when it receives notice of the appeal. Id. However, "[i]f no review by the Board is requested, the Department's decision in the case shall be final" but "[t]he Board may grant a waiver and permit such a review upon good cause shown." Id. § 4916b(d).

## II. Facts

¶ 6. On November 4, 2021, DCF received a report that M.R., a minor, had sexually abused another minor. After an investigation into the incident, DCF substantiated the report against M.R. on February 8, 2022. That same day, because M.R. was under parental custody, DCF sent a "Notice of Substantiation" to M.R.'s father pursuant to 33 V.S.A. § 4916e(1) (2021). M.R.'s father responded on M.R.'s behalf by requesting an administrative review of the substantiation. However, M.R.'s father did not appear or otherwise participate in the administrative review hearing held on June 10, 2022.[2] Subsequently, DCF upheld the substantiation decision. On June 16, 2022, DCF sent a letter to M.R.'s father summarizing its actions to that point and informing M.R.'s father that "[i]f you or M.R. disagree with this decision, and you wish to appeal further on behalf of M.R., you should advise the Human Services Board, by writing to it within thirty (30)

---

[2] The findings of fact below state that M.R.'s father did not attend the conference. However, M.R. points out that the agency record indicates that M.R.'s father "appeared confused by the process and believed that he had attended the [review]." Whether M.R.'s father attended the review or not does not alter the outcome of this case.

days of when this letter was date stamped by the Post Office." M.R.'s father took no further action to challenge the substantiation.

¶ 7. M.R. was represented by counsel in a related delinquency proceeding pertaining to the same underlying conduct. In July 2022, M.R.'s counsel changed, and M.R.'s new counsel questioned M.R. about whether there was a substantiation proceeding ongoing. On October 5, 2022, M.R.'s new attorney contacted DCF and was informed of its decision to uphold the substantiation. The attorney immediately emailed an appeal request to the Board. M.R. alleges that, until his new attorney received this information on October 5, M.R. was unaware of the February 8 substantiation, his father's request for review, and the July determination upholding the substantiation.

¶ 8. On December 2, 2022, DCF moved to dismiss M.R.'s appeal to the Board. M.R. opposed that motion. On February 28, 2024, the hearing officers issued a recommendation to dismiss the request for a hearing in front of the Board as untimely because M.R. had not requested the hearing within the thirty-day window outlined in 33 V.S.A. § 4916b(a) (2021). The Board adopted the hearing officers' recommendation and dismissed the appeal as untimely in a written decision on April 5, 2024. M.R. appealed that decision to this Court.

¶ 9. On appeal, M.R. asserts three bases that he argues entitle him to a fair hearing despite the late request. First, he argues that the statute requires direct notice to him and both his parents, but that DCF sent notice only to his father. Second, he argues that providing notice solely to his father deprived him of a liberty interest without due process of law as required by the United States and Vermont Constitutions. Third, M.R. argues that good cause existed for M.R.'s untimely filing because he was not personally notified of the substantiation, the underlying findings are unsupported, and his father's failure to timely contest the substantiation was caused by lack of sleep, long work hours, and a difficult divorce. We address each argument in turn.

4

### III. Statutory Arguments

¶ 10.    "To properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it." State v. Ben-Mont Corp., 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994).  The "purpose of [this rule] is to ensure that the original forum is given an opportunity to rule on an issue prior to our review."  In re White, 172 Vt. 335, 343, 779 A.2d 1264, 1270-71 (2001).

¶ 11.    Below, M.R. conceded that "Vermont law only requires DCF to mail notice indicating that a minor has been substantiated to the minor's parent or guardian."  Despite this concession, M.R. argues on appeal that the notice that DCF sent was deficient because it was not also sent directly to M.R. and to M.R.'s mother.  M.R. argues that 33 V.S.A. § 4916e(1) (2021), which states that "any notice required pursuant to this subchapter shall be sent . . . to the minor's parents or guardian," should be interpreted as requiring DCF to send a notice to the minor's parents in addition to, rather than instead of, the notice required by § 4916a(a), which instructs DCF to "notify the person alleged to have abused or neglected a child."  He also contends that the use of the plural "parents" in the language in § 4916e(1) requires that notice be sent to both of "the minor's parents," not just one of them.  Id. § 4916e(1) (emphasis added).[3]  M.R. did not raise these issues before the Board.

¶ 12.    We need not consider the merits of these arguments.  They were not raised by M.R. below, and therefore we will not address them on appeal.  See In re Green Mountain Power Corp., 2012 VT 89, ¶ 73 n.7, 192 Vt. 429, 60 A.3d 654 ("We decline to address the Towns' cursory argument, raised for the first time on appeal, that the process afforded by the Board violated [the statute.]").

---

[3]    M.R. does not articulate how the error in providing notice would reopen his appeal period.

IV. Due Process Argument

¶ 13.    We next turn to M.R.'s argument that denying M.R.'s right to appeal to the Board deprived him of a protected liberty interest without due process of law.[4]  Because the operative issue implicates rights under the U.S. and Vermont Constitutions, our review on this question is de novo.  Chittenden Cnty. Sheriff's Dep't. v. Dep't. of Lab., 2020 VT 4, ¶ 9, 211 Vt. 377, 228 A.3d 85.  "We review questions of law, including whether the requirements of due process have been satisfied, de novo."  Hallsmith v. City of Montpelier, 2015 VT 83, ¶ 9, 199 Vt. 488, 125 A.3d 882 (quotation omitted).

¶ 14.    The Fourteenth Amendment to the U.S. Constitution provides that no state shall "deprive any person of life, liberty or property without due process of law."  U.S. Const. amend. XIV, § 1.  Article 4 of the Vermont Constitution states: "Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which one may receive in person, property or character."  Vt. Const. ch. I, art. 4.  "In general, our cases have treated claims under Article 4 similarly to those made under the U.S. Constitution, and we have employed the federal standards to evaluate Article 4 claims."  A.B. v. S.U., 2023 VT 32, ¶ 10, 218 Vt. 123, 298 A.3d 573.  "The Vermont Constitution may provide greater protection than analogous provisions in the U.S. Constitution, but the proponent of such an argument 'bears the burden of explaining how or why the Vermont Constitution provides greater protection.' "  Id. (citing State v. Read, 165 Vt. 141, 153, 680 A.2d 944, 951 (1996)).  M.R. has made no such argument here.

¶ 15.    The essential hallmarks of procedural due process are notice and an opportunity to be heard.  Lowell v. Dep't for Child. & Fams., 2024 VT 46, ¶ 27, __ Vt. __, 325 A.3d 42.  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  Morrissey v. Brewer, 408 U.S. 471, 481 (1972).  The Supreme Court of the United States employs

---

[4] M.R. does not articulate how his proposed holding would allow him to file an otherwise untimely appeal.

6

a three-factor test to determine whether due process rights are satisfied in the face of administrative procedures. The Court considers "the private interest that will be affected by the official action," "the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards," and "the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." Mathews v. Eldridge, 424 U.S. 319, 321 (1976); see also Valmonte v. Bane, 18 F.3d 992, 1003-05 (2d Cir. 1994) (applying three-factor test to placement on Central Register for Child Abuse and Maltreatment). We apply that test to determine whether notice to M.R.'s father provided M.R. with sufficient process.[5]

¶ 16. As described above, DCF provided notice to M.R.'s father pursuant to § 4916e(1) which requires that "[i]f a person alleged to have abused or neglected a child is a minor, any notice required pursuant to this subchapter shall be sent . . . to the minor's parents or guardians." According to M.R., because this notice was unconstitutional, he was not provided the appropriate notice of the proceedings. He concludes that, as a result, this Court should remand to the Board for a fair hearing on the substantiation. We disagree.

A. Private Interests

¶ 17. Two private interests are implicated in the instant case. There is no doubt that an individual's placement on the Child Abuse Registry implicates a protected liberty interest. See In re Selivonik, 164 Vt. 383, 388, 670 A.2d 831, 834 (1995) (citing Valmonte, 18 F.3d at 1002 (holding that statutory impediment to employment caused by inclusion on state child-abuse registry implicates liberty interest)); see also Lowell, 2024 VT 46, ¶ 32 (citing "reduced

---

[5] M.R.'s due process challenge stems from the notice provided to him by DCF. Therefore, his argument concerning the adequacy of the standard of proof used by DCF has no relevance to the questions on appeal. Cf. Valmonte, 18 F.3d at 1004 (addressing petitioner's arguments that the standard of proof was inadequate relative to private interests at stake, not sufficiency of notice). Lack of sufficient notice would entitle M.R. to seek an untimely review before the board; any error in the standard of proof would not.

employment opportunities and avoiding reputational harm" as private interests at stake in registry cases).

¶ 18. In addition, parents also have a right to make decisions "concerning the care, custody, and control of their children." Troxel v. Granville, 530 U.S. 57, 66 (2000) (summarizing holdings in multiple cases describing parental rights including broad parental authority over, care for, and management of minor children). Vermont law acknowledges this interest and describes that parents and permanent guardians have the "rights and responsibilities for the child that include . . . [m]aking decisions regarding: . . . [r]epresentation of the child in legal actions." 14 V.S.A. § 2662(a)(2)(D) (describing and assigning "parental rights" to permanent guardians). Consequently, any notice concerning a minor also typically implicates parental rights concerning care of, and control over, the child.

### B. Risk of Erroneous Deprivation

¶ 19. Having identified the protected private interests at stake, the question becomes whether the procedural due process protections are sufficient relative to the interests involved. Morrissey, 408 U.S. at 481. M.R. claims that notice to his father was insufficient to protect M.R.'s interest of remaining off the Registry.

¶ 20. To satisfy due process concerns, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950). Consequently, "[d]ue process does not require actual notice." Hogaboom v. Jenkins, 2014 VT 11, ¶ 15, 196 Vt. 18, 93 A.3d 131. "[I]f with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied." Mullane, 339 U.S. at 314-15. " 'The criterion is not the possibility of conceivable injury, but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.' " Id. at 315 (quoting Am. Land Co. v. Zeiss, 219 U.S. 47, 67 (1911)).

8

¶ 21.    In this case, M.R. argues that notice sent solely to a parent violates due process by pointing to peculiarities in his case: that his father did not discuss with M.R. either the substantiation or the notices and that, as a result, M.R. was unaware of the process or his right to appeal. Instead, however, the applicable inquiry focuses generally on whether notice to a minor's parent is "reasonably calculated" to appraise both the minor and his parents of the pendency of the action and, therefore, minimize the risk of erroneous deprivation of due process. Id. We hold that it is.

¶ 22.    As noted above, the Supreme Court has long recognized that parents have a right to make decisions regarding their children and that "parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions." Troxel v. Granville, 530 U.S. 57, 68 (2000) (quotation omitted). In addition, "natural bonds of affection lead parents to act in the best interests of their children." Id. (quotation omitted). Consequently, sending notice to a parent of a minor is reasonably calculated to apprise the minor and his parents of the situation and subsequent rights to request reviews. A parent has the maturity required for making the decision of whether to proceed with an administrative review or appeal to the Board and to evaluate the possible implications of a substantiation. Providing additional notice to a minor would provide little more protection because the more-mature, more-capable, and legally responsible parent is already notified and acting in the child's best interest. Consequently, the "probable value" of the additional safeguard that M.R. requests—sending the notice to the minor in addition to the parent—is diminutive in light of these presumptions. Mathews, 424 U.S. at 321.

¶ 23.    There are also other protections incorporated in the statute that ameliorate the risk of an erroneous deprivation of rights. First, the Registry is largely confidential so there is no general public harm to reputation for a substantiated individual. See 33 V.S.A. § 4919 (2021) (providing only limited disclosure of registry information). Instead, DCF may disclose Registry records only to specific entities and in situations that implicate the need to protect vulnerable

9

populations. See 33 V.S.A. § 4919(a)(1)-(11) (2021) (allowing disclosure to an employer who would use that information "to determine whether to hire or retain a specific individual providing care, custody, treatment, transportation, or supervision of children or vulnerable adults," the owner of a facility whose license may be implicated by hiring a substantiated individual, when professional licensing for that substantiated individual is at issue, and to communicate with other states' child and adult protection offices and agencies, among others).

¶ 24. Second, minors are afforded an earlier chance to have their substantiation expunged and thus suffer potentially less consequence from substantiation than adults. Rule 3000 § 3007 of the Child Protection Review Process outlines the "levels" of substantiation and places minors at lower levels than adult counterparts who are substantiated for having perpetrated similar maltreatment. Child Protection Registry and Administrative Review Process § 3007, Code of Vt. Rules 13 172 300, https://outside.vermont.gov/dept/DCF/Shared%20Documents/FSD/ Rules/FSD-3000.pdf?_gl=1*13ulkrv*_ga*NDM1MjAwMzA5LjE3MTcxMDAyNzk.*_ga_ V9WQH77KLW*MTczNjgwNTgwMC4xOC4xLjE3MzY4MDU4OTMuMC4wLjA. [https:// perma.cc/Q49Y-WT56]. Furthermore, Rule 3000 § 3010.01 allows the individuals at lower levels to petition for expungement earlier than those at higher levels. In addition, relevant to the general subject matter of the statute at issue but inapplicable to M.R. who was fifteen when substantiated, 33 V.S.A. § 4916d (2021) requires automatic expungement for "a person who was substantiated for behavior occurring before the person reached 10 years of age" when they turn eighteen years old. See Mullane, 339 U.S. at 315 (describing relevant analysis as "the just and reasonable character of the requirements, having reference to the subject with which the statute deals" (quotation omitted)). This formulation indicates a reasoned balance between the rights of the individuals who have been substantiated, especially minors like M.R., and the governmental interests in disclosing certain names on the Registry to help protect children and vulnerable populations from potential future abuse and maltreatment.

¶ 25. Third, we note that the statute also accounts for the possibility that a parent may not be entitled to the presumptions outlined above. Section 4916e(2) requires notice of substantiation to be sent to the social worker assigned to the child, not the parents, if the child is in DCF custody, which was not the case here. Accordingly, the statute gives due consideration to parent-child relationships that do not fit typical presumptions and accommodates for them through its notice requirements, thus further minimizing risk of an erroneous deprivation of rights.

¶ 26. In support of his position that personal notice to a minor, in addition to a parent, is required, M.R. cites notice requirements in delinquency proceedings to argue that his private right to employment requires he receive direct notice. See In re Gault, 387 U.S. 1, 33 (1967) (requiring that "child and his parents or guardians be notified" in juvenile delinquency hearing). He argues that the deprivation of any liberty interest triggers a requirement that he receive direct notice. This argument misinterprets precedent. "Due process is flexible and calls for such procedural protections as the particular situation demands." Mathews, 424 U.S. at 321 (alteration and citation omitted). This instant case is not a criminal matter where M.R.'s confinement is at stake. The threat to a minor's interests from substantiation is substantially less than in delinquency proceedings where "a youth's freedom and his parents' right to custody are at stake." Gault, 387 U.S. at 34; see also 33 V.S.A. § 4919(a) (2021) (listing only specific circumstances when Commissioner may disclose Registry record). Consequently, the procedural protections are necessarily more robust in delinquency proceedings than proceedings regarding substantiation.

¶ 27. Similarly, M.R. cites cases that require personal service, rather than service by publication, to satisfy due process requirements. See e.g., City of New York v. N.Y., N.H. & H.R. Co., 344 U.S. 293, 296 (1953) (describing "[n]otice of publication [as] a poor and sometimes hopeless substitute for actual service of notice"). There is, however, a substantial difference between notice through publication—an impersonal medium—and direct notice to a parent—a specific individual presumed to act in the best interest of the minor at issue. Finally, M.R. argues

that his father could not have been acting as M.R.'s agent for this matter without M.R.'s knowledge or assent. However, this argument ignores a parent's right to authority and control over their minor children. See Troxel, 530 U.S. at 69-70. M.R. is correct that the Supreme Court has required review by a neutral factfinder in instances where a minor's freedom was implicated due to commitment to mental health institutions for treatment. See e.g., Parham v. J. R., 442 U.S. 584, 606 (1979). However, this case is distinguishable because, as described above, substantiation does not implicate a loss of physical liberty. We decline to hold that minors must consent for their parents to act on the minor's behalf.

## C. Government's Interest

¶ 28. Balanced against private interest and risk of erroneous deprivation, the final consideration is "the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." Mathews, 424 U.S. at 321. As mentioned above, the state "has a significant interest in protecting children from abuse and maltreatment" and does so, in part, by creating the Child Protection Registry of all investigations that have resulted in a substantiated report. Valmonte, 18 F.3d at 1003; see also 33 V.S.A. § 4911 (2021) (outlining purpose of statute, including "protect[ing] children whose health and welfare may be adversely affected through abuse or neglect"). In addition, the statute is crafted to allow disclosure of Registry records only in limited situations when these governmental interests are implicated. 33 V.S.A. § 4919(a)(1)-(11) (2021). M.R. argues that it would not be burdensome for the State to provide notice to a minor in addition to the parent. The Board made no findings regarding the additional administrative burdens involved in notifying both parents and minors. Even assuming that the additional administrative burdens are minimal, however, they need not be "imposed upon administrative action to assure fairness" because, as described above, the risk of erroneous deprivation of rights is negligible when notice is sent to a parent. Valmonte, 18 F.3d at 1003.

¶ 29.   Consequently, we hold that the procedures required by the statute do not violate M.R.'s due process rights.  The procedures are not a mere gesture, but are, instead, reasonably calculated to apprise the minor and parents of the substantiation decision and their rights to request review.  Furthermore, the procedures do not create an unnecessary risk of erroneous deprivation of rights.

## V.  Good Cause

¶ 30.   Finally, we turn to M.R.'s argument that the Board abused its discretion when it found that there was no good cause for waiving the thirty-day appeal window.  "In reviewing the merits of a case appealed from the Human Services Board, we will not set aside findings unless clearly erroneous . . . and we give deference to a determination of the board within its area of expertise."  Zingher v. Dep't. of Aging and Disabilities, 163 Vt. 566, 572, 664 A.2d 256, 259 (1995) (citation omitted).

¶ 31.   As described above, the Board may waive the thirty-day appeal window "upon good cause shown."  33 V.S.A. § 4916b(d) (2021).  This Court has held that "the good cause standard is applied when determining whether the offender at issue had a valid reason for failing to meet the appeals deadline."  In re M.S., 2017 VT 64, ¶ 20, 205 Vt. 204, 172 A.3d 786.  This requires the reason to be outside of the petitioner's power: "[g]ood cause refers to situations in which there is no fault on the movant's part."  Id. (citation omitted).

¶ 32.   M.R. argues that the Board erred when it found that no "good cause" existed.  He contends that he did not commit the underlying conduct, that he was not aware of the substantiation, and that the situation that led to his untimely appeal request was outside of his control because his father never discussed the appeal with M.R.  Furthermore, M.R. states that during the relevant time period, M.R.'s father was in the midst of a difficult divorce, working long hours, not sleeping well, and does not recall actually receiving the letter.

13

¶ 33. The Board acted within its discretion in holding that there was no good cause here. The situation described by M.R. is not the type of extreme circumstance that would typically justify a waiver for good cause. First, the existence of good cause "does not pertain to the substance of the underlying case but rather to the reasons why the offender did not meet the appeals deadline." Id. Consequently, M.R.'s assertion that he is innocent of the underlying assault is inapposite. Good cause would exist, for example, in the event of the "failure of the Postal Service to deliver the notice of appeal." Id. (quotation omitted). In contrast, good cause does not exist in the event of "excusable neglect," which "assumes fault on the part of the movant." Id. (alterations and quotation omitted). Here, as in In re M.S., "petitioner's failure to appeal his substantiation to the Board in a timely manner was due to factors entirely within his control," namely: M.R.'s father was in control of his work schedule, lack of sleep, and divorce. Id. ¶ 21.

¶ 34. Insofar as M.R. argues that M.R. personally did not have control over his father's actions, the Board was correct to reject that argument. As described above, notice to M.R.'s father was constitutionally sufficient, and M.R.'s father acted on M.R.'s behalf when he requested that DCF review the substantiation. M.R.'s father's failure to follow up on that request does not give M.R. another bite at the apple. See In re Landry, 2015 VT 6, ¶ 19, 198 Vt. 565, 119 A.3d 455 ("By failing to appeal, petitioner's daughter foreclosed her mother's right to seek retroactive benefits, based upon her first application."); In re M.S., 2017 VT 64, ¶¶ 5, 21 (finding no good cause when petitioner's lawyer failed to appeal case).

¶ 35. Therefore, the Board properly found that there was no good cause warranting its acceptance of M.R.'s appeal despite its untimeliness. Consequently, the Board appropriately found that it did not have jurisdiction to hear M.R.'s appeal. In re Beer, 2010 VT 31, ¶ 6, 187 Vt. 641, 996 A.2d 225 (mem.) (holding that "timely filing of an appeal is a jurisdictional requirement").

14

## VI.  Conclusion

¶ 36.    The State did not deprive M.R. of due process and we affirm the Board's decision that there was no good cause to extend the 30-day appeal window.  We do not reach the statutory challenges raised by M.R. because they were not preserved.

Affirmed.

FOR THE COURT:

_____

Associate Justice