NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 46

No. 23-AP-323

| | |
|---|---|
| Miriam Lowell and Seth Healey | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| Department for Children and Families et al. | April Term, 2024 |

Timothy B. Tomasi, J.

David J. Shlansky of Shlansky Law Group, LLP, Chelsea, Massachusetts, for
 Plaintiffs-Appellants.

Charity R. Clark, Attorney General, and David R. Groff, Assistant Attorney General, Montpelier,
 for Defendants-Appellees Department for Children and Families, Catherine Clark, Kathleen
 Greenmun, and Christine Gadwah.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **COHEN, J.** Plaintiffs Miriam Lowell and Seth Healey, proceeding under pseudonyms, appeal from the trial court's decision dismissing their complaint against various defendants including the Department for Children and Families (DCF).[1] On appeal, plaintiffs

---

[1] According to their notice of appeal, plaintiffs also appealed from the trial court's order denying plaintiffs' motion for reconsideration of its dismissal order. However, they abandoned that claim by failing to brief it. See McAdams v. Town of Barnard, 2007 VT 61, ¶ 8, 182 Vt. 259, 936 A.2d 1310 ("Arguments not briefed are waived."). Plaintiffs additionally claim that the trial court improperly denied their motion for a preliminary injunction. Since we affirm the court's dismissal of plaintiffs' complaint, we do not address this separate claim because "any pronouncement on the subject will have no effect." In re Snowstone, LLC Act 250 Jurisdictional Op., 2021 VT 72A, ¶ 27, 216 Vt. 216, 274 A.3d 42.

primarily argue that the complaint adequately stated a constitutional due process claim challenging DCF's process for placing individuals on the Vermont Confidential Child Protection Registry. We dismiss as moot the portion of the appeal relating to Lowell. In all other respects, we affirm.

## I. Procedural and Factual Background

¶ 2.     Our review begins with a brief overview of the procedural setting at the center of this appeal. The registry, which is maintained by DCF, consists of "a record of all investigations that have resulted in a substantiated report" of a person who has abused or neglected a child. 33 V.S.A. § 4916(a)(1). Records contained on the registry are not available to the public and, except in limited circumstances, remain confidential. See id. § 4916(c); id. § 4919. For instance, DCF may disclose a record on the registry to an employer concerning a prospective employee, but only if the purpose of the employment involves working with children. See id. § 4919(a)(3). The same is true of an employer seeking a record of a current employee, but only upon that employee's consent. Id.

¶ 3.     There are several steps before an individual is placed on the registry. DCF must first receive a report of abuse or neglect of a child and then choose to investigate the report's allegations. Id. §§ 4915, 4915b. If it elects to investigate, DCF must determine whether the allegations of abuse or neglect are substantiated. Id. § 4915b(b). Should DCF determine that the allegations are substantiated, it must provide certain notice to the individual, including information about the substantiation decision, its consequences, the nature of the registry, and the right to seek further review. Id. § 4916a(a).

¶ 4.     Before being listed on the registry, the individual can request an administrative review of DCF's substantiation determination.[2] Id. §§ 4916a(c)(1), 4916(a)(1). Upon that request,

_____

[2]     Failure to timely exercise the right to an administrative review renders DCF's substantiation determination a final and unreviewable order. 33 V.S.A. § 4916a(k).

DCF must provide the individual with certain investigative information and then hold an "administrative review conference" within thirty-five days, where it retains the burden to establish substantiation. Id. § 4916a(d); id. § 4916a(e) ("[DCF] shall have the burden of proving that it has accurately and reliably concluded that a reasonable person would believe that the child has been abused or neglected by that person."). Presiding over the conference is an administrative reviewer who must be "a neutral and independent arbiter" with "no prior involvement in the original investigation of the allegation." Id. § 4916a(f). During the conference, the accused individual can present documentary evidence and other information they deem relevant, but they lack subpoena power to compel the attendance of witnesses. Id. § 4916a(d), (e). The administrative reviewer has the power to overturn DCF's substantiation, and they must render a decision within seven days of the conference. Id. § 4916a(g). The individual must receive that decision within seven days of its issuance. Id. § 4916a(i). If the administrative reviewer accepts DCF's substantiation determination, the individual is immediately placed on the registry. Id. § 4916a(h).

¶ 5. An individual who receives an adverse decision from the administrative reviewer may appeal to the Human Services Board, which must afford the individual with a fair hearing under 3 V.S.A. § 3091 within sixty days of the request. 33 V.S.A. §§ 4916a(i), 4916b(a)-(b). The fair hearing is held before a neutral hearing officer with no prior involvement in the matter. See Fair Hearing Rules, § 1000.3(a), Code of Vt. Rules 13 020 002, http://www.lexisnexis.com/hottopics/codeofvtrules. A fair hearing under § 3091 affords the individual with more procedural rights and consists of a de novo review. See In re Bushey-Combs, 160 Vt. 326, 328, 628 A.2d 541, 542 (1993) (holding that "fair hearing" under § 3091 "is to be de novo"). The individual may subpoena witnesses, examine and cross-examine witnesses under oath, be represented by counsel, and examine documents and records related to the investigation prior to the hearing. See 3 V.S.A. § 3091(b); Fair Hearing Rules, § 1000.3, Code of Vt. Rules 13

020 002, http://www.lexisnexis.com/hottopics/codeofvtrules. The Board has the power to reverse or modify the substantiation decision, with DCF retaining the burden of proof by a heightened preponderance-of-the-evidence standard. Fair Hearing Rules, §§ 1000.3(o), 1000.4(d), Code of Vt. Rules 13 020 002, http://www.lexisnexis.com/hottopics/codeofvtrules. If the Board upholds the substantiation decision, an individual may seek judicial review by this Court. See V.R.A.P. 13; 3 V.S.A. § 3091(f).

¶ 6. With this backdrop in mind, we now turn to the instant matter. According to plaintiffs' complaint, Lowell is a single parent with three children who shares a home with Healey. Lowell was employed as a personal care specialist by an in-home care provider. On September 20, 2018, Lowell was terminated from that position after DCF chose to investigate a report of abuse or neglect with respect to her children. Healey was also the subject of that report and was also investigated by DCF. The allegations of abuse or neglect centered upon claims that plaintiffs used drugs in front of one of Lowell's children, and that plaintiffs forced that child to use drugs and consume alcohol. Healey was also reported to have physically abused another child of Lowell's.

¶ 7. In October 2018, DCF notified plaintiffs of its determination that the allegations of abuse or neglect were substantiated. Plaintiffs thereafter timely requested an administrative review pursuant to § 4916a. DCF sent a response to that request in November 2018, informing plaintiffs, among other things, of their procedural rights during the administrative review conference.

¶ 8. In June 2019, DCF sent plaintiffs a letter scheduling their administrative review conference for August 29, 2019.[3] On August 14, 2019, plaintiffs responded with a letter seeking

---

[3] Nothing from the record, the complaint, or the parties' filings in this appeal explains this delay. The trial court expressed confusion as to why the administrative process had stalled even after plaintiffs' federal action was dismissed. We similarly cannot determine the cause for why the administrative review conference was initially scheduled so long after plaintiffs exercised their right to a pre-listing administrative review. Nevertheless, the issue is not currently before us.

4

to defer the conference and "confer about how to correct the process[] to allow for compliance with constitutional requirements." (Internal quotation marks omitted.)

¶ 9. Three days before the administrative review was scheduled to take place on August 29, 2019, plaintiffs filed a complaint in the United States District Court for the District of Vermont. They alleged that the administrative review process violated their right to adequate due process and sought both compensatory and injunctive relief. In November 2019, the court denied plaintiffs' requested injunction.[4] See Lowell v. Vt. Dep't for Child. & Fams., No. 5:19-cv-150, 2019 WL 11767547, at *4 (D. Vt. Nov. 18, 2019), aff'd, 835 Fed. App'x 637 (2d Cir. 2020) (summary order), cert. denied, __ U.S. __, 141 S. Ct. 2715 (2021). At that point, defendants sought to resume the administrative review process over plaintiffs' objection.

¶ 10. In February 2023, plaintiffs filed the complaint in this case, naming DCF and several DCF-affiliated employees and officials as defendants. The complaint made numerous allegations challenging the constitutionality of the administrative review process, largely mirroring their federal complaint. Plaintiffs alleged that the administrative review procedure was unconstitutional under both the U.S. Constitution and the Vermont Constitution and asserted that defendants' implementation of that procedure violated the minimal requirements for procedural due process.[5] Plaintiffs sought declaratory and injunctive relief and relief in the nature of mandamus under Vermont Rule of Civil Procedure 75. They contemporaneously moved for a

---

[4] Plaintiffs voluntarily dismissed their federal action without prejudice on August 8, 2023. See Plaintiffs' Stipulation, Lowell v. Vt. Dep't for Child. & Fams., No. 5:19-cv-150 (D. Vt. Aug. 8, 2023), ECF No. 61.

[5] The trial court construed the complaint as a facial challenge to the constitutionality of the administrative review process, and plaintiffs do not take issue with that description on appeal. See In re Mountain Top Inn & Resort, 2020 VT 57, ¶ 22, 212 Vt. 554, 238 A.3d 637 (discussing general differences between facial and as-applied challenges). Our decision does not rest on the nature of their constitutional claims, and we therefore need not resolve the issue.

preliminary injunction based on those alleged procedural infirmities. Defendants moved to dismiss the complaint in its entirety and opposed plaintiffs' motion for a preliminary injunction.

¶ 11. Following a hearing, the trial court dismissed plaintiffs' complaint for failure to state a claim. It assumed for purposes of the motion that defendants had a sufficient liberty interest at stake to warrant due process protections. Defendants refused to take a position as to whether plaintiffs' failure to exhaust their administrative remedies warranted dismissal, so the trial court did not address that issue. It rejected the merits of plaintiffs' due process challenge, concluding that the pre-listing administrative review process was constitutionally sufficient under this Court's precedent and federal case law. It similarly found that plaintiffs' "conjectural claims" regarding the possibility that DCF's employees might deprive plaintiffs of their procedural rights during the administrative review process were not reviewable. After the trial court denied their motion for reconsideration, plaintiffs brought this appeal.

## II. Analysis

¶ 12. This Court reviews decisions on a motion to dismiss de novo, "using the same standard as the trial court." Sutton v. Vt. Reg'l Ctr., 2019 VT 71A, ¶ 20, 212 Vt. 612, 238 A.3d 608. We will uphold a dismissal for failure to state a claim under Vermont Rule of Civil Procedure 12(b)(6) only if "it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." Boland v. Est. of Smith, 2020 VT 51, ¶ 5, 212 Vt. 386, 237 A.3d 723 (quotation omitted). "Accordingly, we assume that the facts pleaded and reasonable inferences from those facts are true, and that any contrary facts or inferences asserted in defendant's pleadings are false." Rodrigue v. Illuzzi, 2022 VT 9, ¶ 30, 216 Vt. 308, 278 A.3d 980. A trial court's dismissal for failure to state a claim may be affirmed "on any appropriate ground." Fluerrey v. Dep't of Aging & Indep. Living, 2023 VT 11, ¶ 4, 217 Vt. 527, 292 A.3d 1219 (quotation omitted).

6

### A. Mootness as to Lowell

¶ 13.    During the pendency of this appeal, DCF filed a motion with this Court seeking to dismiss Lowell's claims as moot.[6] According to DCF, plaintiffs attended an administrative review conference in May 2024, after which the administrative reviewer overturned DCF's substantiation decision against Lowell and fully concluded the matter in her favor. DCF argues that, with the substantiation having been overturned without Lowell ever appearing on the registry, this Court can no longer provide her with any effective relief. It contends that Lowell's claims are therefore moot. We agree.

¶ 14.    A case becomes moot "if the reviewing court can no longer grant effective relief." In re Blue Cross, 2022 VT 53, ¶ 7, 217 Vt. 285, 288 A.3d 160 (quotation omitted). The fact that a live controversy existed at the start of a case is not dispositive, as "intervening events since its filing can render it moot." Paige v. State, 2017 VT 54, ¶ 7, 205 Vt. 287, 171 A.3d 1011. When further events render a claim moot, we lack the jurisdiction to address it. See Wool v. Off. of Prof'l Regul., 2020 VT 44, ¶ 6, 212 Vt. 305, 236 A.3d 1250. "Thus, even if a case presented an actual controversy in the lower court, we may not consider the issues unless they remain live throughout the appellate process." In re M.M., 2024 VT 28, ¶ 6, __ Vt. __, __ A.3d __ (quotation omitted).

¶ 15.    Here, Lowell has been vindicated by a final decision of the administrative reviewer in a process that she directly challenged in the complaint. That decision resolved her claims on appeal, which are focused solely on seeking injunctive, mandamus, and declaratory relief for an allegedly unconstitutional process. Even if this Court were to determine that the administrative

---

[6]    Although the motion proposed to dismiss the entire appeal as moot, counsel for DCF clarified at oral argument that DCF was not seeking to dismiss Healey's claims since the administrative reviewer partially upheld the substantiation determination against him. We therefore consider the motion as directed solely towards Lowell.

review violates Lowell's right to procedural due process, our reversal would provide Lowell with no practical relief.

¶ 16.    Although Lowell tacitly concedes that her claim for injunctive relief is moot under the instant circumstances, she maintains that her two remaining claims have not been mooted by the administrative reviewer's decision.  She effectively argues that, if this Court were to reverse and remand, the trial court could still award her relief in the form of a declaration that the existing administrative review process is unconstitutional and an order that defendants fix the allegedly defective process.[7]

¶ 17.    "The purpose of a declaratory judgment is to provide a declaration of rights, status, and other legal relations of parties to an actual or justiciable controversy."  Doria v. Univ. of Vt., 156 Vt. 114, 117, 589 A.2d 317, 318 (1991) (quotation omitted).  Absent a justiciable controversy, a declaratory judgment is "merely an advisory opinion which we lack the constitutional authority to render."  Id.  That is precisely the case here.  Even if Lowell's right to due process was violated, "the harm has already passed, and there is no longer a threat of actual injury."  Id.  The administrative review process has concluded in her favor, and she no longer has a legal interest in the outcome of any declaration regarding the constitutional adequacy of that process.  See id. at 117, 589 A.2d at 318-19 (holding that candidate's constitutional challenge seeking declaratory judgment was moot at conclusion of election because harm had since passed and no threat of actual injury).  Our decision in All Cycle, Inc. v. Chittenden Solid Waste Dist. does not alter this

---

[7] Despite Lowell's arguments to the contrary, she does not have any legal interest in the outcome of Healey's claims, as that interest inures solely to Healey.  See In re John L. Norris Trust, 143 Vt. 325, 328, 465 A.2d 1385, 1387 (1983) ("[T]he plaintiff generally must assert [their] own legal rights and interests, and cannot rest [their] claim to relief on the legal rights or interests of third parties." (quotation omitted)).  Lowell's apparent claim regarding an alleged violation of the separation-of-powers doctrine was not raised below, as the complaint lacks any allegations on that subject.  As to Lowell's remaining arguments that her claims are not moot, we conclude that they lack merit.

8

conclusion because Lowell did not seek monetary damages for the alleged constitutional violation. 164 Vt. 428, 434-35, 670 A.2d 800, 804-05 (1995) (holding plaintiff's request for declaratory relief not moot because declaration on constitutionality of government conduct was predicate to plaintiff's claim for monetary damages under 42 U.S.C. § 1983).

¶ 18. The same is true of Lowell's mandamus claim. Assuming she prevailed in this appeal, Lowell would obtain no benefit from the mandamus relief she seeks in the complaint—an order that defendants remedy an allegedly unconstitutional process. See In re LeClair, 2011 VT 63, ¶ 7, 190 Vt. 535, 26 A.3d 41 (mem.) (concluding that inmate's mandamus claim under Vermont Rule of Civil Procedure 75 for credit for time served was moot upon release as inmate "would gain nothing"). With Lowell no longer subject to the substantiation process, and with no impending risk of her being listed on the registry, she stands to gain no practical benefit from the requested mandamus order.

¶ 19. Lowell argues that her claims raise issues that are capable of repetition yet evading review and are therefore excepted from our mootness doctrine. See Blue Cross, 2022 VT 53, ¶ 9 (recognizing "mootness exception for cases that are capable of repetition yet evading review"). But to satisfy that exception, Lowell must meet two conditions: "(1) the challenged action must be in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there must be a reasonable expectation that the same complaining party will be subjected to the same action again." Id. (quotations omitted) (alteration accepted).

¶ 20. Lowell makes no attempt to satisfy the first prong of the exception. She argues only that "there is a reasonable expectation that" she could again be subjected to an unconstitutional substantiation procedure because of the high number of child abuse and neglect substantiations that are opened annually. Putting aside the fact that Lowell only addresses this second factor of the exception, Lowell must nevertheless "demonstrate that it is more than just

9

theoretically possible that the situation [she] currently objects to will repeat itself." Id. ¶ 16 (quotation omitted). She must "show a demonstrated probability that [she] will become embroiled again in the same situation." Id. (quotation omitted). Lowell has failed in that respect. Her reliance on the number of annual substantiation investigations represents, at best, a theoretical probability that she might again be subjected to a substantiation process she claims is unconstitutional. This statistic does not establish a reasonable expectation that Lowell will be (1) investigated by DCF and (2) substantiated for unidentified and hypothetical allegations of abuse or neglect.

¶ 21. Lowell also argues that her claims are not moot because she has and will continue to suffer negative collateral consequences if her claims are not addressed. See In re M.M., 2024 VT 28, ¶ 10 ("Under the [negative collateral consequences exception], we will consider a case that no longer involves a live controversy if the challenged action will continue to pose negative consequences for the appellant if it is not addressed." (quotation omitted)). She purports to have already suffered adverse consequences in the form of unemployment and loss of custody over her children. However, reaching the issues on appeal would not impact Lowell's previous termination from employment and loss of custody; she neither describes nor cites to any authority that a favorable decision from this Court would ameliorate those injuries.

¶ 22. Lowell further contends that she will face negative consequences because, should Healey's substantiation be upheld and listed on the registry, she might be punished for allowing her children to be in Healey's presence. Lowell's claim is purely speculative and unsupported by any authority. See id. ¶ 13 (holding that negative collateral consequences mootness exception not applicable where parents failed to identify "the requisite connection between the possibility" of registry listing and adverse adjudication that child was in need of care or supervision). But even assuming Healey fails to overturn the substantiation determination, there are countless

10

eventualities that would need to occur for those risks to materialize. In other words, the likelihood that Lowell will be punished for allowing Healey to interact with her children is untenably remote. See In re Collette, 2008 VT 136, ¶ 17, 185 Vt. 210, 969 A.2d 101 (observing that "the mere possibility of negative collateral consequences" is insufficient to avoid mootness).

¶ 23. In sum, Lowell's claims on appeal are moot, and they are not saved by either of the mootness exceptions. Accordingly, we grant DCF's motion to dismiss Lowell's claims.

### B. Healey's Due Process

¶ 24. We now turn to Healey's procedural due process claim.[8] He argues that for the administrative review to satisfy due process, DCF must provide him with all of the procedural rights that accompany a full adversarial hearing.

¶ 25. Our review of Healey's constitutional claim requires us to first determine its source. Healey does not rest any aspect of his due process claim exclusively on the Vermont Constitution.

---

[8] Healey also argues that the statutory scheme creating the administrative review process is an unconstitutional violation of the separation of powers. However, the complaint lacks any allegations attacking the constitutionality of § 4916 or § 4916a on separation-of-power grounds. He has therefore failed to preserve this argument for appellate review. Brault v. Welch, 2014 VT 44, ¶ 15, 196 Vt. 459, 97 A.3d 914 ("Issues not raised in pleadings are waived."); N.W. Vt. Solid Waste Mgmt. Dist. v. Cent. Vt. Solid Waste Mgmt. Dist., 159 Vt. 61, 65, 614 A.2d 816, 819 (1992) ("[Excessive fee] claim was not raised by the complaint, and we will not consider it here for the first time."). For the same reason, we do not address his claim that he was entitled to a jury trial under Chapter I, Article 12 of the Vermont Constitution.

Relying on Axon Enter., Inc. v. Fed. Trade Comm'n, 598 U.S. 175 (2023), Healey further contends the trial court should have addressed his constitutional claims regardless of the sufficiency of the complaint's allegations because the trial court has jurisdiction to address such claims and the administrative agency does not. This contention confuses subject-matter jurisdiction to hear a claim with the adequacy of a complaint's factual allegations to support that claim. The former "refers to the power of a court to hear and determine a general class or category of cases." In re Est. of Thomas, 2022 VT 59, ¶ 7, 217 Vt. 368, 295 A.3d 850 (quotation omitted). In contrast, a Rule 12(b)(6) motion for failure to state a claim "test[s] the law of the claim." Brigham v. State, 2005 VT 105, ¶ 11, 179 Vt. 525, 889 A.2d 715 (mem.) (quotation omitted). Axon has no relevance to this appeal. 598 U.S. at 180 (explaining that sole "task today" was to determine whether district court had subject matter jurisdiction to hear constitutional challenges to administrative adjudicative powers on separation-of-powers grounds).

See State v. Brillon, 2010 VT 25, ¶ 6, 187 Vt. 444, 995 A.2d 557 (refusing to address state constitutional argument not raised in pleadings or adequately presented on appeal). Nor does he contend that the Vermont Constitution offers more procedural protections than that of its federal counterpart. See id. (determining that defendant's failure to "set forth any rationale as to how our analysis of this constitutional claim should differ under the Vermont Constitution in comparison with the federal constitution" precluded review (quotation omitted)). As such, we construe Healey's procedural due process claim as arising solely from the U.S. Constitution. Cf. In re Smith, 169 Vt. 162, 171, 730 A.2d 605, 612 (1999) (mem.) ("The due process requirements imposed by Article 10 of the Vermont Constitution mirror those imposed by the United States Constitution.").

¶ 26. Under the Fourteenth Amendment to the U.S. Constitution, a state is prohibited from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To adequately state a procedural due process claim, "a plaintiff must allege facts showing that governmental action deprived plaintiff of a property [or liberty] interest protected by the Fourteenth Amendment" to the United States Constitution. Gould v. Town of Monkton, 2016 VT 84, ¶ 19, 202 Vt. 535, 150 A.3d 1084. This Court performs a two-part inquiry when presented with a procedural due process claim: "the first asks whether there exists a liberty . . . interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Wool, 2020 VT 44, ¶ 20 (quotation omitted). Like the trial court, we assume that Healey has a protected liberty interest at stake despite not alleging that he will seek employment related to children.[9] Cf. Valmonte v. Bane, 18 F.3d 992,

---

[9] As already noted, DCF did not argue before the trial court that plaintiffs' complaint should be dismissed for failure to exhaust administrative remedies. See Luck Bros., Inc. v. Agency of Transp., 2014 VT 59, ¶ 21, 196 Vt. 584, 99 A.3d 997 (explaining that requirement to exhaust administrative remedies by raising claim with agency before seeking judicial relief applies to "constitutional challenges to administrative proceedings"); Stone v. Errecart, 165 Vt. 1, 6, 675

1001 (2d Cir. 1994) (holding that plaintiff challenging process for placement on registry for child abuse has liberty interest where she has alleged that she seeks, but will be unable to obtain, employment in child-care field). We therefore focus on the second inquiry.

¶ 27. The core components of procedural due process are notice and an opportunity to be heard. See In re Miller, 2009 VT 112, ¶ 9, 186 Vt. 505, 989 A.2d 982. However, procedural due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." Hogaboom v. Jenkins, 2014 VT 11, ¶ 14, 196 Vt. 18, 93 A.3d 131 (quoting Mathews v. Eldridge, 424 U.S. 319, 334 (1976)). Rather, it "is a flexible concept that calls for such procedural protections as the particular situation demands." Luck Bros., Inc. v. Agency of Transp., 2014 VT 59, ¶ 10, 196 Vt. 584, 99 A.3d 997 (quoting Mathews, 424 U.S. at 334). This means that "[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the proceedings." Miller, 2009 VT 112, ¶ 13 (quotation omitted).

¶ 28. For instance, a pre-deprivation hearing "need not be elaborate . . . nor must it definitively resolve the propriety of the [deprivation]." Mordukhaev v. Daus, 457 Fed. App'x 16, 20-21 (2d Cir. 2012) (summary order) (quotations omitted). Even notice and an opportunity to be heard can, under certain circumstances, be dispensed with at the pre-deprivation stage without running afoul of due process "provided there is sufficient post-deprivation process." Spinelli v. City of New York, 579 F.3d 160, 170 (2d Cir. 2009) (quotation omitted).

---

A.2d 1322, 1326 (1996) (holding that failure to exhaust administrative remedies "deprives the superior court of jurisdiction"). The trial court therefore did not address that question. Nor did the parties brief the topic in this appeal. Given these circumstances, we do not address the issue of exhaustion. See Vt. Coll. of Fine Arts v. City of Montpelier, 2017 VT 12, ¶ 13, 204 Vt. 215, 165 A.3d 1065 (reaching merits of claim without addressing exhaustion issue given conflicting jurisprudence on exhaustion requirement for challenging tax-exempt status).

¶ 29. Healey argues that, for purposes of notice, he must be given the unredacted investigation file. Healey also contends that, for the administrative review to comport with due process, he must be provided with subpoena power, the right to cross-examine witnesses, and an expansion on the right to present exculpatory evidence. In essence, Healey proposes that the pre-deprivation process of the administrative review must provide the extensive procedural protections afforded to individuals in the post-deprivation process. We disagree.

¶ 30. This Court has not addressed the sufficiency of the procedural safeguards in place for the administrative review under 33 V.S.A. § 4916. However, we have previously examined the constitutionally required standard of proof for the substantiation stage under a previous iteration of the statutory scheme at issue here. In In re Selivonik, 164 Vt. 383, 388, 670 A.2d 831 834-35 (1995), the petitioner argued that due process required DCF to prove substantiation by a preponderance of the evidence before being listed on the registry. This was the same standard required for expungement, which, at the time, was the only form of post-listing review. We rejected that argument, reasoning that employing the higher standard "at the investigatory stage is not necessary to meet due process concerns because of the availability of such a hearing at any time after inclusion in the registry." Id. at 388-89, 670 A.2d at 835. We distinguished the Second Circuit's decision in Valmonte v. Bane, which found New York's registry process to be constitutionally insufficient, because the child abuse registry process at issue there did not provide any process with a heightened standard of proof unless an individual suffered adverse employment consequences as a direct result of being included on the registry. Selivonik, 164 Vt. at 388-89, 670 A.2d at 835.

¶ 31. The statutory process addressed in Selivonik has since been substantially amended by the Legislature and now affords individuals far greater procedural rights throughout the registry-listing process. See generally, 2007, No. 77, § 1. And although the administrative review

14

process does not provide the trial-like setting that Healey seeks, it continues to be constitutionally adequate under the familiar three-part test set forth in Mathews. That test requires us to balance (1) the private interest affected by the official action, (2) the risk of erroneous deprivation of that interest through the procedures used and the probable value of additional procedures, and (3) the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." 424 U.S. at 334-35.

¶ 32. Healey identifies several private interests, only two of which—reduced employment opportunities and avoiding reputational harm—are arguably at stake.[10] These claimed interests are not insignificant. See Herrera v. Union No. 39 School Dist., 2009 VT 35, ¶ 11, 186 Vt. 1, 975 A.2d 619 ("[O]ne of the liberties protected by [the Due Process Clause] is the individual's right to engage in any of the common occupations of life." (quotation omitted)); Stone v. Town of Irasburg, 2014 VT 43, ¶ 32, 196 Vt. 356, 98 A.3d 769 (observing that plaintiff "has a strong private interest at stake since any damage to her reputation can affect her standing in the community and her future prospects" for holding political office); Valmonte, 18 F.3d at 1003 (recognizing that, for balancing purposes under Mathews, plaintiff has "a legitimate interest in pursuing her chosen occupation").

---

[10] We again stress that we only assume Healey has a liberty interest at stake by being placed on the registry. Supra, ¶ 26. Our decision today does not definitely resolve whether Healey adequately alleged a sufficient liberty interest for purposes of his procedural due process claim. Nevertheless, in assessing the competing interests under Mathews, we do not consider several of Healey's purportedly protected interests—family association and the care, custody, and control of his children—because we see no reason to conclude that a registry listing will affect those interests. Healey is not the spouse of Lowell, nor is he the legal guardian of Lowell's children. Healey offers no legal basis to suggest that being listed on the registry would impact his right to reside with Lowell or her children. Importantly, we have already observed that the fundamental interests implicated in juvenile proceedings under chapter 55 of Title 33, including family integrity, are "not at stake in the registry process" of chapter 49 of Title 33. In re M.E., 2010 VT 105, ¶¶ 13-14, 189 Vt. 114, 15. A.3d 112 ("[W]e have expressly recognized that the statutes governing the registry process . . . have legislative goals, functions, and procedures completely different from those governing juvenile proceedings in family court." (quotation omitted)).

¶ 33. In contrast, DCF "has a profound interest in the welfare of the child, particularly his or her being sheltered from abuse." Tenenbaum v. Williams, 193 F.3d 581, 593-94 (2d Cir. 1999). Indeed, some of the most fundamental liberty interests are "counterbalanced by the compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against [the children's guardians]." Southerland v. City of New York, 680 F.3d 127, 152 (2d Cir. 2012) (quotation omitted). When that government interest is implicated, as it is here, courts will afford "unusual deference in the abuse investigation context" absent "obvious extremes." Wilkinson ex rel. Wilkinson v. Russell, 182 F.3d 89, 104 (2d Cir. 1999), cert. denied, 528 U.S. 1155 (2000).

¶ 34. As for the adequacy of the current procedure in light of those dueling interests, that Mathews factor weighs in DCF's favor. To recap, the registry-listing process begins when DCF makes an initial substantiation of a report of abuse, and the accused individual is then provided with notice of "the nature of the substantiation decision" as well as other information related to the registry. 33 V.S.A. § 4913a(a). When an individual requests a pre-listing administrative review, DCF must promptly provide that review within thirty-five days. Id. § 4916a(d). DCF must also provide the person with "a copy of the redacted investigation file, notice of time and place of the conference, and conference procedures, including information that may be submitted and mechanisms for providing information." Id. The subject individual is also entitled to redacted versions of prior investigation files that DCF relied upon in its substantiation determination. Id. The administrative review conference is presided over by "an objective arbiter" with no previous involvement in the investigation. Id. § 4916a(f). And although the individual has no right to compel a witness's appearance, id. § 4916a(d), they are entitled to "present documentary evidence or other information that supports his or her position and provides information to the reviewer in making the most accurate decision regarding the allegation," id. § 4916a(e).

16

¶ 35. Here, providing redacted investigation files is constitutionally adequate for purposes of notice. Based on the complaint's allegations, the information Healey received before the review conference placed him on notice that he was accused of injuring a specific child that resulted in scarring. Healey tacitly conceded in the complaint that the redacted investigation file provided him with the factual basis for that allegation. Healey makes a similar concession with respect to the charge of having forced another child to consume alcohol and drugs. In fact, Healey expressly alleged that, until he read through the redacted investigation file, he was unaware DCF was basing its substantiation determination on that alleged incident. Thus, even when read in the light most favorable to Healey, the complaint admits that Healey was notified of the nature of DCF's allegations against him and their underlying facts. See Mordukhaev, 457 Fed. App'x at 21 (holding that pre-deprivation process satisfied notice requirements where individual had notice of charge and explanation of evidence supporting charge). Our review of the redacted investigation file supports our conclusion that Healey was provided with the necessary information to mount an adequate defense. The redactions protected sensitive information relating to allegations of abuse or neglect of a child and did not deprive Healey of adequate notice at this pre-deprivation stage.[11] See Spinelli v. City of New York, 579 F.3d at 172 ("The particularity with which alleged conduct must be described varies with the facts and circumstances of the individual case."); Doyle v. Camelot Care Ctrs., Inc., 305 F.3d 603, 623 (7th Cir. 2002) (holding that individuals accused of child abuse received adequate pre-listing notice where redacted case file provided them with nature of charges and details of some evidence underlying those charges).

---

[11] Pursuant to 33 V.S.A. § 4912(12), a redacted investigation file consists of "the intake report, the investigation activities summary, and case determination report that are amended in accordance with confidentiality requirements set forth in [33 V.S.A. § 4913]. By statute, some of this information is no longer confidential at the post-listing fair hearing held before the Human Services Board. Id. § 4913(g)(2); see also Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547 n.12 (1985) ("[T]he existence of post-termination procedures is relevant to the necessary scope of pretermination procedures.").

17

¶ 36. We reach a similar conclusion with regards to the other procedural rights that Healey argues are required at the administrative review stage. As with all pre-deprivation proceedings, the "primary function" of a pre-listing administrative review is to provide "an initial check against mistaken decisions" of DCF's initial substantiation determination. O'Connor v. Pierson, 426 F.3d 187, 198 (2d Cir. 2005). The procedural rights currently afforded to Healey adequately serve that function. At the review conference, he may present documentary evidence and other information that will aid his cause in overturning the initial substantiation determination. In other words, Healey will have the opportunity to "tell his side of the story" before being placed on the registry. Gilbert v. Homar, 520 U.S. 924, 929 (1997). To require a trial-like setting at this stage would undermine DCF's interest in efficiently and expeditiously determining whether a particular person poses a risk to the health and safety of a child, especially one in that person's household. See Bohn v. Dakota Cty., 772 F.2d 1433, 1439 (8th Cir. 1985) (holding that government's interest in protecting powerless children will be impaired where additional procedural protections "might delay or frustrate the protection of these children").

¶ 37. Two other factors temper the risk of an erroneous listing on the registry as a result of the administrative review process. First, information on the registry is not public; it is available only to a select set of entities and only under specific circumstances. See 33 V.S.A. § 4919; see also id. § 4916b(a) (providing that Department shall note in registry listing that subject individual has appealed substantiation determination to Human Services Board). Second, Healey will have the opportunity to seek a prompt post-deprivation fair hearing before the Human Services Board and, if dissatisfied, judicial review. See Nnebe v. Daus, 644 F.3d 147, 159 (2d Cir. 2011) (holding that risk of erroneous deprivation in pre-deprivation context "decisively" in government's favor because risk "is mitigated by the availability of a prompt post-deprivation hearing"). As already discussed, Healey must receive a decision by the administrative reviewer within fourteen days of

18

the administrative review conference and can thereafter seek a post-listing review in the form of a fair hearing before the Human Services Board under 3 V.S.A. § 3091. That de novo hearing before the Board, presided over by a neutral hearing officer, provides Healey with the right to subpoena and cross-examine witnesses. He may also call the child to testify, who may be compelled to do so except in certain circumstances. See 33 V.S.A. § 4916b(b)(3). The Board may reverse the substantiation determination. And if Healey does not prevail before the Board, he has the right to judicial review by this Court. The adequate pre-listing procedure coupled with the more thorough post-listing procedure renders the process constitutionally sufficient.[12] See Locurto v. Safir, 264 F.3d 154, 173-75 (2d Cir. 2001) (holding that due process satisfied where "minimal" pre-deprivation hearing given to terminated employee followed by "wholly adequate post-deprivation hearing"); Doolen v. Wormuth, 5 F.4th 125, 135 (2d Cir. 2021) ("Where, as here, a given procedure includes some form of pre-deprivation hearing and post-deprivation remedies with the opportunity to obtain full judicial review, the combination of the two provide due process." (quotation omitted)).

¶ 38. Our conclusion mirrors that of Dupuy v. Samuels, where the United States Court of Appeals for the Seventh Circuit addressed a due process claim that arose from a similar pre-deprivation process for listing individuals on a child abuse registry. 397 F.3d 493 (7th Cir. 2005).

---

[12] Healey also argues the administrative reviewer might violate his due process rights by engaging in ex parte communications and considering extra-record evidence without allowing him an opportunity to address those communications and evidence. This claim is entirely speculative. Cf. Doolen v. Wormuth, 5 F.4th 125, 135 (2d Cir. 2021) (concluding that due process argument "offers nothing more than speculation" that final decisionmaker would engage in conduct violative of due process); Swanigan v. City of Chicago, 881 F.3d 577, 584 (7th Cir. 2018) (rejecting due process claim as "entirely speculative" where police officer "might" refer to cleared-closed case files in future encounter with plaintiff pursuant to allegedly unconstitutional department policy). In any event, the availability of an adequate post-listing review process renders his claim without merit. See Lilakos v. New York City, 808 Fed. App'x 4, 9 n.3 (2d Cir. 2020) (summary order) (explaining that deprivation of right during "the more structured environment of established state procedures" will nevertheless satisfy due process based on "a closer examination of the adequacy of the post-deprivation process" (quotation omitted)).

Dupuy involved an appeal from a preliminary injunction requiring Illinois to provide certain procedural protections during the process for being placed on the registry. Between the statutes and the injunction, the process consisted of the following. First, the agency had to determine that there was credible evidence to support a report of child abuse and, if so, the report would be "indicated" and at risk of being placed on the registry, thus impairing an individual's ability to work with children. Id. at 497. The individual had the right to an administrative review conference before being listed. Id. at 501. That conference would be presided over by a neutral arbiter with no prior involvement. Although the individual could not call or cross-examine witnesses, they could be represented by counsel, present their own account and submit evidence, and the presiding arbiter could overturn the initial determination. Id.

¶ 39. The plaintiffs in Dupuy argued that this administrative conference violated their right to procedural due process because it did not afford them with "a full evidentiary hearing at the pre-deprivation stage." Id. at 508. In upholding the adequacy of the administrative review process under Mathews, the court noted the importance "that the accused individual is provided with adequate notice of the opportunity for such a hearing and with sufficient information about the nature of the allegation to afford an adequate opportunity to tell his side of the story." Id. Of significance, "the decision-maker . . . is a person who has had no part in the investigative process." Id. And "while not having the opportunity to call other witnesses and to engage in cross-examination, [the accused] does have the opportunity to tell his side of the story and to present evidence that he deems relevant before a new decision-maker." Id. Thus, the pre-listing process satisfied due process because:

> At the Administrator's conference stage, the accused has adequate notice of the allegation and an opportunity to place his version of the situation before an individual who has played no adversarial role in the matter. Furthermore, any adverse determination is subject to de novo review under a heightened standard of proof within a very short period of time. Given the countervailing concerns of [the

20

agency] to identify individuals who pose a continuing threat to children, we believe that th[is] structure . . . is adequate to ensure the accused individual due process.

Id. at 509.

¶ 40.    The same is true here.  As already noted, Healey was provided with adequate notice of the nature of the allegations forming the basis of the substantiation determination before an administrative review conference.  The conference itself will be held before a neutral and objective arbiter who has had no prior involvement in the matter and can overturn the substantiation determination.  Healey can provide documentary evidence and other information to offer his version of the events, including any exculpatory evidence that would undermine the initial substantiation determination.  While he cannot subpoena or cross-examine witnesses, he has sufficient tools to tell his version of events and provide information to undercut the factual basis for DCF's allegations of abuse or neglect.  Should Healey not prevail there, he can obtain a post-listing de novo hearing before the Human Services Board via another neutral arbiter.  At this hearing, DCF must satisfy a higher standard of proof, Healey has the right to subpoena, examine, and cross-examine witnesses, and the Board must issue a prompt decision.  Given the above, we see no reason to disturb the trial court's determination that the procedural protections afforded at the pre-listing administrative review stage comport with due process.

The portion of the appeal relating to plaintiff Miriam Lowell is dismissed as moot.  In all other respects, the judgment of the trial court is affirmed.

FOR THE COURT:

_____

Associate Justice

21