Filed 02/26/25

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-00999

---

Groundworks Collaborative, Inc. et al v. Vermont Agency of Human Services et al

---

## DECISION ON MOTION FOR JUDGMENT ON THE PLEADINGS

In December, this court issued a partial decision on Defendants' motion for judgment on the pleadings, dismissing Plaintiffs' VAPA claim for improper venue and giving Plaintiffs 14 days to elect whether to dismiss the remaining claims and file them in Washington Civil, or to continue those claims here. *See* Partial Dec. on Mot. for J. on the Pleadings at 3–4 (Dec. 17, 2024). Plaintiffs have elected to continue in this unit. *See* Notice of Intent to Continue in this Court (filed Dec. 20, 2024). Accordingly, the court now addresses the Rule 75, Due Process, and Common Benefits claims (Counts 1, 3, and 4).

The question on a motion for judgment on the pleadings "is whether, once the pleadings are closed, the movant is entitled to judgment as a matter of law on the basis of the pleadings." *Island Indus., LLC v. Town of Grand Isle*, 2021 VT 49, ¶ 10, 215 Vt. 162. On such a motion, "all well pleaded factual allegations in the nonmovant's pleadings and all reasonable inferences that can be drawn therefrom are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." *Id*. "The standard for granting a motion for judgment on the pleadings is an exacting one," but the court must grant such a motion "if the plaintiff's pleadings contain no allegations that if proven would permit recovery." *Huntington Ingalls Indus., Inc. v. Ace Am. Ins. Co.*, 2022 VT 45, ¶ 17, 217 Vt. 195.[1]

### Count I: Rule 75

In Count I, Plaintiffs seek relief in the nature of mandamus under Rule 75, alleging that the State failed to ensure that households that met the criteria for temporary emergency housing under the Budget Adjustment Act would continue to receive such housing through June 30, 2024. Am. Compl. ¶¶ 93–102. They claim that this failure was an "arbitrary abuse of power that amounts to failure to

---

[1] The factual background to this dispute has been summarized in prior decisions, and the court need not repeat it here.

Decision on Motion for Judgment on the Pleadings
Page 1 of 10
24-CV-00999 Groundworks Collaborative, Inc. et al v. Vermont Agency of Human Services et al

comply with the BAA." *Id*. ¶ 95. This claim is virtually identical to the claim from the original complaint.

The Rule 75 claim fails for at least two reasons. First, the claim is plainly moot. Accepting the allegations as true, the State failed to ensure that certain households received the temporary emergency housing to which they were entitled through June 30, 2024. That date, however, has come and gone. There is nothing the court can do now that would provide relief for that alleged failure—at least under the Rule 75 rubric. *See Paige v. State*, 2017 VT 54, ¶ 7, 205 Vt. 287; *see also Skaskiw v. Vermont Agency of Agric.*, 2014 VT 133, ¶ 33, 198 Vt. 187 ("A case that originally presented an actual controversy may become moot if the facts or circumstances of the case change such that [the court] can 'no longer grant effective relief.'") (quoting In re Moriarty, 156 Vt. 160, 163 (1991)). Moreover, Plaintiffs' claims have been further mooted by the Legislature's passage of the 2025 "Big Bill," which sets new program requirements and directs DCF to implement new emergency housing rules. *See* 2023, No. 113 (adj. sess.), § E.321. (effective July 1, 2024). Indeed, the Amended Complaint was filed before the new rules went into effect, and therefore does not even mention the new rules or allege how they caused notice and accessibility problems.

Plaintiffs contend that the implementation of changes to GA housing eligibility is a problem that is "capable of repetition yet evading review," given that the current set of eligibility guidelines in the new legislative act is temporary, and that the two other cases in the past four years challenging the implementation of changes to eligibility for GA housing did not reach the merits before the change took effect. Pls.' Opp'n at 4–6. "The capable-of-repetition-yet-evading-review exception requires that (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." *In re S.S.*, 2024 VT 87, ¶ 18 (Vt. Dec. 20, 2024) (quotation and brackets omitted). To evaluate whether the exception applies, the court "conduct[s] a person-specific inquiry and require[s] more than a theoretical possibility that the situation will recur." *Handy v. Fiske*, 2023 VT 46, ¶ 8. Thus, Plaintiffs must show a "demonstrated probability that [they] will become embroiled again in this same situation." *In re S.S.*, 2024 VT 87, ¶ 18.

Plaintiffs have not made such a showing here. Plaintiffs' Rule 75 claim is inextricably tied to the 2024 BAA and the ejection of otherwise homeless individuals from temporary emergency housing on March 15, 2024.[2] *See* Am. Compl. ¶¶ 93–102. The fact that the legislature changes the housing

---

[2] Defendants contend that the entire case is moot. The court addresses the potential mootness of the due process claim separately below. The court need not address mootness as to the Common Benefits claim because, as discussed below, that claim fails on the merits.

eligibility guidelines frequently does not demonstrate that these individuals would be subjected to the same actions again. *See In re S.S.*, 2024 VT 87, ¶ 18 ("S.S.'s conclusory assertion that because of DCF's policies and because she is still homeless and receiving benefits '[i]t is reasonable to expect [that S.S.] will be exited again from shelter' is too speculative to show a 'demonstrated probability' that she will be affected by a similar situation where she would be subject to an improperly imposed period of ineligibility."); *see also In re Green Mountain Power Corp.*, 148 Vt. 333, 335–36 (1987) (requiring more than mere hypothetical theories to meet second prong of exception); Wright & Miller, 13C Fed. Prac. & Proc. Juris. § 3533.8.1 n.10 (3d ed.) ("More is required by this doctrine than the mere capability of repetition."). Additionally, "[a]cts that result from complex political choices" may also afford "grounds for refusing to find a prospect of repetition sufficient to defeat mootness." Wright & Miller, 13C Fed. Prac. & Proc. Juris. § 3533.8.1 "The more complex the process—such as a legislative budgeting process—the greater the uncertainty whether the future will ever present sufficiently similar constraints and sufficiently similar responses. And the more thoroughly political the judgments, the greater the wisdom of leaving future quarrels for future decision." *Id*. There is no question that the alleged factual basis for Plaintiffs' Rule 75 claim results from a complex political process; thus, any prediction that the alleged acts are likely to recur is pure speculation.

Second, even assuming the Rule 75 claim is not moot, it fails on the merits. Plaintiffs seek relief in the nature of mandamus. "The purpose of mandamus is generally to require a public official or body to perform a simple ministerial duty imposed by law." *Ahern v. Mackey*, 2007 VT 27, ¶ 8, 181 Vt. 599. Mandamus generally "does not apply to a case where official action depends upon the application of judgment to a state of facts, making the act discretionary." *Okemo Trailside Condominiums, Inc. v. Blais*, 135 Vt. 500, 502 (1977). Mandamus relief may also "be available to enforce even discretionary duties '[w]here there appears, in some form, an arbitrary abuse of the power vested by law in an administrative officer . . . which amounts to a virtual refusal to act or to perform a duty imposed by law.' " *Ahern*, 2007 VT 27, ¶ 8 (quoting *Sagar v. Warren Selectboard*, 170 Vt. 167, 171 (1999)) (quotation omitted in original). Plaintiffs have identified no ministerial duty imposed by law that would require DCF to affirmatively investigate the ongoing eligibility of every individual currently in emergency housing before it allows the individual's housing to expire. Nor is DCF's alleged failure to act the type of "arbitrary abuse" of discretion that might warrant mandamus relief. *See Island Indus.*, 2021 VT 49, ¶¶ 36–38; *Inman v. Pallito*, 2013 VT 94, ¶¶ 14–17, 195 Vt. 218; *Chrysler Corp. v. Makovec*, 157 Vt. 84, 88–91 (1991).

Plaintiffs maintain that such ministerial duty can be found in 33 V.S.A. § 2104(b). That statute provides:

> When a person designated by the Commissioner . . . of this section receives an application for General Assistance or is informed that a person is in need of General Assistance the person so designated shall investigate and make a determination as to the applicant's eligibility for General Assistance, and provide under rules of the Department emergency assistance as may be required.

Plaintiffs do not rely on § 2104(b) in their Amended Complaint, however. Instead, the Amended Complaint relies on the 2024 Budget Adjustment Act ("BAA") (H. 839) and its requirement that Defendants must " 'ensure that temporary emergency housing is provided through June 30, 2024' to households that meet the criteria set out in the BAA, subject only to the availability of such housing." Am. Compl. ¶ 93. Thus, Plaintiffs are arguing a claim they have not pled. Moreover, § 2104 does not say what Plaintiffs want it to say. It requires DCF to investigate and determine a person's eligibility for General Assistance in response to application for assistance or if it is informed that the person is in need of such assistance. Thus, § 2104(b)—like the 2024 BAA—affords DCF with discretion regarding how to fulfill its statutory duties and does not require DCF to affirmatively investigate those currently receiving such assistance.[3] Defendants are entitled to judgment on the pleadings on the Rule 75 claim.

### Count III: Article IV Due Process

In Count III, Plaintiffs allege that the State's administration of the GA Housing program violates Article IV of the Vermont Constitution, specifically its "[f]ailure to provide proper eligibility determinations or notice of decisions including denials or termination of benefits" and its administration of the program "without clear standards or rules or eligibility criteria." Am. Compl. ¶¶ 107–08. Defendants contend that this claim fails because the emergency housing rules are legislative rather than adjudicative, and because Plaintiffs have not alleged a constitutionally protected due process interest. Defs.' Mot. at 11–17. Our Supreme Court "treat[s] Article 4 as the Vermont equivalent of the federal constitution's Due Process Clause." *Holton v. Dep't of Emp. & Training (Town of Vernon)*, 2005 VT 42, ¶ 27, 178 Vt. 147 (citing *Quesnel v. Town of Middlebury,* 167 Vt. 252, 258 (1997)). A state cannot deprive a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

"To adequately state a procedural due process claim, a plaintiff must allege facts showing that governmental action deprived plaintiff of a property [or liberty] interest protected by the Fourteenth

---

[3] This court fully agrees with and adopts Judge Toor's reasoning that the 2024 BAA did not impose a ministerial duty to continue housing individuals in motels and that there was no arbitrary abuse of discretion with respect to the BAA. *See* Ruling on Mots. for Prelim. Inj. at 6–9 (Mar. 22, 2024).

Amendment to the United States Constitution." *Lowell v. Dep't for Child. & Fams.*, 2024 VT 46, ¶ 26 (quotation omitted) (brackets in original). When presented with a procedural due process claim, the court performs a two-part inquiry: "first[,] whether there exists a liberty . . . interest which has been interfered with by the State; . . . second[,] . . . whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id*. (quotation omitted). "The core components of procedural due process are notice and an opportunity to be heard." *Id*. Nevertheless, procedural due process is a "flexible concept"; "[t]he formality and procedural requisites . . . can vary, depending upon the importance of the interests involved and the nature of the proceedings." *Id*. (quotation omitted).

"Due process requirements apply to the procedures that must be used in reaching agency determinations only if they are adjudicative, rather than rulemaking or legislative, in nature." *Appeal of Stratton Corp.*, 157 Vt. 436, 442 (1991) (citing *Bi–Metallic Investment Co. v. State Bd. of Equalization,* 239 U.S. 441, 446 (1915)). Thus, "[o]fficial action that is legislative in nature is not subject to the notice and hearing requirements of the due process clause." *Interport Pilots Agency, Inc. v. Sammis*, 14 F.3d 133, 142 (2d Cir. 1994). That is because "the legislative determination provides all the process that is due." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982).

To the extent Plaintiffs allege that Defendants have administered the emergency housing program "without clear standards or rules or eligibility criteria," that is plainly an attack on rulemaking, or legislative, action. Thus, to that extent, the due process claim fails. Plaintiffs maintain, however, that their due process claim is really about "the longstanding failure to provide recipients proper notice and Defendants' constitutionally defective administration of the GA Program." Opp'n at 12. They highlight allegations that "Defendants failed to notify program participants when they needed to apply to be reauthorized before their vouchers terminated and did not provide timely individualized determinations terminating or denying GA housing benefits." *Id*. (citing Am. Compl. ¶¶ 22, 56, 57, 61, 67, 70, 80); *see also* Am. Coml. ¶ 107 ("Failure to provide proper eligibility determinations or notice of decisions including denials or termination of benefits violates Art. IV of the Vermont Constitution."). These allegations arguably implicate adjudicative rather than legislative determinations.

Plaintiffs still must allege a constitutionally protected due process interest. Generally, this means a "legitimate claim of entitlement." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 578 (1972). Defendants contend that Plaintiffs "cannot demonstrate" a constitutionally protected property interest "in emergency housing because the statutes and rules governing the GA housing program vest considerable discretion in DCF to ensure that the program operates within housing and funding

limitations." Defs.' Mot. at 14. Defendants cite to statutory provisions and rules that provide that emergency housing assistance is contingent on "available appropriations," the program has "no provision for ongoing assistance," and that the assistance "is not an entitlement and may be discontinued should there not be sufficient funds." *Id*. at 14–16. This, Defendants argue, demonstrates that the legislature left it to DCF's ultimate discretion to allocate these limited resources. *Id*. at 14–17.

"In determining whether a given benefits regime creates a property interest protected by the Due Process Clause," courts "look to the statutes and regulations governing the distribution of benefits." *Kapps v. Wing*, 404 F.3d 105, 113 (2d Cir. 2005). "Where those statutes or regulations meaningfully channel official discretion by mandating a defined administrative outcome, a property interest will be found to exist." *Id*. (quotation and brackets omitted). The mere fact of limited funding does not negate a property interest:

> Relatively few courts have addressed the question of whether a social services program's contingency on the availability of funding renders it too indefinite to create a property interest. Those courts that have have generally concluded that— *to the extent that funds are available*—statutes that would create protected property interests apart from funding limits do so regardless of these limits.

*Id*. at 117–18 (emphasis in original). Moreover, the legislative identification of a program as "not an entitlement" is not necessarily dispositive. *See Meeker v. Manning*, 540 F. Supp. 131 (D. Conn. 1982). The *Meeker* case involved a fuel assistance program with a regulation stating that "this is not an entitlement program." *Id.* at 138. Although the rules gave the state discretion about issuing the benefit, the requirement to process applications within 21 days and provide written notice of decision was enough to create a constitutionally protected property interest. *Id*. at 137–39.

The court concludes that the GA Housing program is sufficiently non-discretionary to create a protected property interest. *See* 33 V.S.A. § 2103(a) ("the Department for Children and Families shall furnish General Assistance . . . to any otherwise eligible individual"); FY 2025 Appropriations Act, § E.321(a) ("the Commissioner for Children and Families shall ensure that General Assistance Emergency Housing is provided"). The statute "meaningfully channel[s] official discretion by mandating a defined administrative outcome." *Kapps*, 404 F.3d at 113. While the statute does not provide a ministerial duty to provide notice under the circumstances alleged by Plaintiffs for purposes of pursuing mandamus relief under the Rule 75 claim, the Vermont Constitution's due process clause may separately require such notice. *See id*. at 115–16 ("Every circuit to address the question . . . has concluded that applicants for benefits, no less than current benefits recipients, may possess a property interest in the receipt of public welfare entitlements. . . . [W]hen the statutory scheme in question

mandates award of the benefit upon satisfaction of specified criteria, an applicant has a limited but sufficient interest in the receipt of that benefit to warrant some measure of due process protection in demonstrating his eligibility.") (quotation omitted); see also, e.g., *Colon v. Wagner*, 462 F. Supp. 2d 162, 170 (D. Mass. 2006) ("Given the grave potential consequences to persons terminated from emergency shelters, these deficiencies [in the form notices of termination provided to recipients] violated the Due Process Clause of the Fourteenth Amendment, as several courts have recognized.").

The problem for Plaintiffs, however, is that while the due process claim is not inextricably tied to the 2024 BAA in the same way that the Rule 75 claim is, it is still largely dependent on emergency housing entitlements that have long since expired. Therefore, it might be moot. One of the core allegations is that the Budget Adjustment Act, passed on March 1, 2024 and signed by Governor Scott on March 13, extended the general assistance housing program until June 30, 2024 for people in certain "vulnerable" categories, and that DCF failed to properly notify those people in March 2024 that they qualified for extended housing. Then, as noted above, the Legislature passed the 2025 "Big Bill," which sets new program requirements and directs DCF to implement new emergency housing rules. *See* 2023, No. 113 (adj. sess.), § E.321. (effective July 1, 2024). All of the individual plaintiffs—C.T. Trouble, Phyllis Parent, and George Flannery—lost their temporary emergency housing in March of last year, but then were later approved for motel housing. Ruling on Mot. for Prelim. Injunct. at 3 (Mar. 22, 2024). Moreover, the new program rules continue to provide that "[a]uthorization for emergency housing assistance shall be issued for periods up to 28 days." General Assistance Rule 2652.2(i)(1) (eff. July 1, 2024) (available at https://dcf.vermont.gov/esd/laws-rules/current). At this point, continued housing assistance under this program to which Plaintiffs might have been entitled last spring would have to be reauthorized anyway. Thus, given that Plaintiffs seek only declaratory and injunctive relief, it is not clear what relief the court could grant at this juncture that would remedy the alleged due process violations that took place in early 2024.

Plaintiffs, however, also seem to allege some sort of *ongoing* failure to provide proper notice of determinations to terminate or deny GA Housing benefits. *See* Am. Compl. ¶¶ 81–84. The only specific example of such alleged failure that is new to the Amended Complaint is a March 29, 2024 email from DCF stating that hundreds of households receiving housing assistance had an authorization that would end on April 1, 2024. *Id*. ¶ 80. While that example is not sufficient to demonstrate a present, live controversy, a complaint "need not give a specific and detailed statement of the facts constituting the cause of action." *Bock v. Gold*, 2008 VT 81, ¶ 8, 184 Vt. 575 (quotation omitted); *see also*, *e.g.*, *Endres v. Endres*, 2006 VT 108, ¶ 5, 180 Vt. 640 ("Although wife has not specifically enumerated

facts to demonstrate that husband owed her a legal duty and breached that duty, such specificity is not required at the pleading stage."). Here, on the question of whether the due process claim presents a live controversy, the Amended Complaint is sufficiently oblique as to preclude the court's determination one way or the other. The court is also concerned that this claim might be one that is capable of repetition yet evading review; but, again, the court cannot make that determination on this record. For that reason, to the extent that the Amended Complaint seems to allege an ongoing due process violation, the due process claim survives the motion for judgment on the pleadings.

<u>Count IV: Common Benefits Clause</u>

In Count IV, Plaintiffs allege that the State's "implementation of the GA Housing Program makes it unreasonably difficult for some people, particularly those with disabilities that impair their ability to navigate bureaucratic processes, to apply for and retain the benefits of the GA Housing Program which they need and for which they are eligible." Am. Compl. ¶ 112. Defendants argue that Plaintiffs have not pled a valid Common Benefits Clause claim.

To state a Common Benefits claim, "[t]he complaint must contain a short and plain statement that (1) defines the part of the community disadvantaged by the legal requirement; (2) identifies the governmental purpose, if any is known, in excluding a part of the community from the benefit; and (3) explains how the omission of a part of the community from the benefit does not bear a reasonable and just relation to a governmental purpose identified." *Vitale v. Bellows Falls Union High Sch.*, 2023 VT 15, ¶ 24, 217 Vt. 611 (quotation and footnote omitted). It is "insufficient to assert that there is a law that results in some people having a benefit and others not, accompanied by the legal conclusion that this difference in treatment violates the Vermont Constitution." *Id*. Ultimately, "[i]t is the plaintiff's burden to demonstrate that a statute does not bear a reasonable and just relation to a governmental purpose and is therefore unconstitutional," and the plaintiff must overcome the presumption of constitutionality. *Id*. ¶ 21.

According to Defendants, Plaintiffs have merely "allege[d] vaguely" that "some unidentified aspect of DCF's administration of 'the GA Housing Program' has made it 'unreasonably difficult for some people . . . to apply for and retain the benefits of the GA Housing Program which they need and for which they are eligible.' " Defs.' Mot. at 18 (quoting Am. Compl. ¶ 112). Defendants assert that this allegation, along with Plaintiffs' "generic" legal conclusion that " '[t]he exclusion of this part of the community from the full benefit of the GA Housing Program does not bear a reasonable and just relation to the governmental purpose of the program,' " *id*. at 18–19 (quoting Am. Compl. ¶ 113), fails to state a claim because Plaintiffs "have not identified what action has excluded a part of the

community from a common benefit, explained the government purpose putatively served by the exclusion, or explained why the exclusion does not bear a reasonable and just relation to the government purpose." *Id.* at 19. Defendants also argue that, to the extent Plaintiffs' Common Benefits claim is based on DCF's implementation of the expanded disability criteria under the 2024 BAA, that Act and DCF's new policies actually expanded eligibility for the disabled population to qualify for emergency housing assistance. *Id.* at 19.

Plaintiffs respond that they have adequately pled all three elements of their Common Benefits claim: (1) the part of the community disadvantaged is "people . . . with disabilities that impair their ability to navigate bureaucratic processes," Am. Compl. ¶ 112; (2) as a matter of law, Defendants' purpose in administering the GA housing program is to get benefits to eligible individuals, Opp'n at 22; and (3) the exclusion of people from GA Housing due to administrative burdens does not bear a reasonable and just relation to the governmental purpose of providing benefits to eligible people. *Id.* at 24–25; Am. Compl. ¶ 113. But their allegation as to the second element refers to the purpose of the GA housing program generally, not to the purpose in excluding those with disabilities that impair their ability to navigate bureaucratic processes from receiving housing assistance. *See Vitale*, 2023 VT 15, ¶ 24 ("[t]he complaint must . . . identif[y] the governmental purpose, if any is known, *in excluding a part of the community from the benefit*") (emphasis added). For that same reason, Plaintiffs also cannot sufficiently allege the third element.[4]

Even assuming that Plaintiffs have superficially pled the elements of a Common Benefits claim, another issue is that Plaintiffs' claim is based not on a statutory or regulatory distinction, but instead on an alleged regulatory shortcoming in DCF's "administ[ration]" and "implementation" of the GA Housing Program. *See* Am. Compl. ¶¶ 111–12. Our Supreme Court has observed in the education context that "[i]t is unclear to what extent the state is liable for the disparate impacts of a facially neutral statute . . . ." *Vitale*, 2023 VT 15, ¶ 42, 217 Vt. 611. But the allegations here have nothing to do with the impact of the statute; rather, they are focused solely on DCF's *administration* and *implementation* of the GA Housing Program. In other words, the claim does not depend on the statute at all, but intimates that the alleged Common Benefits violation could be remedied merely by DCF administering the statute differently. While DCF's *administration* of the statue may be problematic and may disadvantage those with disabilities—and there may be other remedies for the alleged problematic administration—that is not a violation of the Common Benefits Clause.

---

[4] The court recognizes that a plaintiff need not always allege a governmental purpose in excluding part of the community from the benefit if that purpose is unknown: "[W]e by no means require the pleadings to conduct a deep dive into legislative purpose and acknowledge that a plaintiff may not be able to obtain information sufficient to definitively identify a specific governmental purpose prediscovery." *Vitale*, 2023 VT 15, ¶ 24 n.9.

## <u>ORDER</u>

The court denies Defendants' motion for judgment on the pleadings as to the due process claim, but grants the motion as to the other two remaining claims (Rule 75 and Common Benefits). The court will address next steps in the case, including further proceedings on the Motion for Class Certification, at the status conference scheduled for February 28, 2025.

Electronically signed pursuant to V.R.E.F. 9(d): 2/26/2025 12:45 PM

_____
Samuel Hoar, Jr.
Superior Court Judge