Filed 01/29/26

VERMONT SUPERIOR COURT

Orleans Unit
247 Main Street
Newport VT 05855
802-334-3305
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-00745

---

In re: Jeffrey Ray

---

## FINDINGS, CONCLUSIONS, AND ORDER

In this post-conviction relief case, petitioner Jeffrey Ray seeks to vacate his sentence for second-degree murder. Petitioner alleges that he did not receive effective assistance of counsel because his defense counsel failed to conduct a reasonable mitigation investigation in advance of sentencing and consequently failed to effectively present mitigation evidence at the sentencing hearing. The case came before the court for a bench trial on July 29 and 30, 2025, and the parties submitted post-hearing memoranda on October 29, after which the court took the matter under advisement. Because petitioner has not shown he was prejudiced by defense counsel's purported failures to investigate and present mitigation evidence, the petition for post-conviction relief is denied.[1]

### Findings of Fact

On the morning of May 25, 2015, petitioner Jeffrey Ray shot and killed Rick Vreeland, the husband of Jeffrey's ex-wife Brenda Vreeling and the stepfather to petitioner's children including daughters Rebecca Ray and Sarah Ray. Petitioner had previously threatened to kill Mr. Vreeland on multiple occasions. The Orleans County State's Attorney charged petitioner with first-degree murder the next day, and at arraignment, petitioner entered a plea of not guilty.

Petitioner was represented in his criminal case by assigned lead counsel David Sleigh and co-counsel Kyle Hatt. In September 2015, counsel retained investigator Susan Randall to assist with the defense. The initial email from Attorney Hatt to Ms. Randall asked her to contact petitioner's sister Terri Mayer "for purposes of gather[ing] information about [petitioner's] background generally, and specifically as much detail as possible about his history with alcoholism" and petitioner's "conflict with Mr. Vreeland over Brenda" including any information concerning "any recent dispute between [petitioner] and Mr.

---

[1] Petitioner correctly notes in his post-trial memorandum that a sidebar conference held on the first day of trial was not recorded and accordingly is not reflected in the transcript. This was the result of technical issues in the courtroom, for which the court apologizes. The sidebar conference is not material to the resolution of petition.

1

Vreeland which led to the shooting." Pet.'s Exh. 6. Attorney Hatt's email noted that this was a "hard case," that there was "ample evidence of longstanding conflict" between petitioner and Mr. Vreeland, "and plenty of premeditation evidence too." *Id.* The email stated that counsel was considering potential defenses including "diminished-capacity from intoxication" and "extreme provocation." *Id.* The email noted that the Defender General had approved five hours for Ms. Randall's investigation.

Ms. Randall spoke with Terri Mayer by phone on September 4, 2015, for over two hours. Ms. Randall prepared a report for defense counsel on or about September 10, 2015, which summarized the conversation. The report described petitioner's traumatic family history, which included physical abuse, chronic alcoholism beginning at age 5, an extensive criminal history, and violence in the family. The report also detailed petitioner's complicated history with Brenda, their children together, and Mr. Vreeland. Ms. Mayer claimed that Brenda had cheated on petitioner with Mr. Vreeland during their marriage, that Brenda later forged petitioner's signature on a quitclaim deed to property that she owned with petitioner and now lived at with Mr. Vreeland, and that petitioner's children had recently shown petitioner the deed to provoke him into killing Mr. Vreeland. Ms. Mayer claimed the children did this in order to get rid of both petitioner and Mr. Vreeland.

Ms. Mayer noted that Ms. Randall "might want to talk" to petitioner's friends Billy and Kim Waters. According to Ms. Mayer, petitioner's daughter Rebecca Ray had recently visited the Waters' home in Washington State while petitioner was staying there, had requested that petitioner return to Vermont to be in Rebecca's wedding, and had stated to Ms. Waters that Mr. Vreeland "was no good." Pet.'s Exh. 6. The report ended with the following sections:

> **Possible follow-up investigation:**
>
> - get release signed by Jeff; full intake interview with him to generate list of places to request records
>
> **Possible interviews:**
>
> **Billy & Kim Waters** – tel: 509-[XXX-XXXX]; Jeffrey's old friends who he used to stay with in WA; Kim heard from Jeff's daughter Becky that Vreeland was bad news.
>
> Daughter **Becky**
>
> - request arson records relating to brother Jerry Ray to show level of family insanity
> - request Jeff records from stint at Sacred Hard Mental Health facility Spokane, WA

Pl.'s Exh. 7. Defense counsel did not request any further investigation from Ms. Randall, nor did they retain any other investigator to conduct the follow-up inquiries suggested in Ms. Randall's report.

At a January 23, 2018 change-of-plea hearing, Jeffrey pled guilty to an amended charge of second-degree murder. As part of the plea agreement, the parties agreed to a contested sentencing where the State could argue for a sentence of up to twenty-five years to life and Jeffrey could argue for a sentence as low as twenty years to life, all suspended but ten years to serve with lifetime supervision.

On February 20, 2018, Newport Probation and Parole submitted a pre-sentence investigation report. Ms. Mayer completed a phone interview with probation and shared much of the same information concerning petitioner's childhood history that previously was provided to Ms. Randall. Rebecca and Sarah Ray were also interviewed. The PSI report recommended a sentence of 30 years to life to serve.

A contested sentencing hearing was held over three days on March 7, 8, and 9, 2018, before Judge Robert Bent. Petitioner was represented at the hearing by Attorney Hatt. The State presented several witnesses including petitioner's ex-wife Brenda and daughter Rebecca. The defense presented a single witness, Dr. Scott Lukas, who presented expert testimony that petitioner's decades of chronic alcoholism damaged his brain and negatively affected his judgment and impulse control. In response to questioning from the judge, Dr. Lukas explained how this damage was likely compounded by petitioner's early childhood trauma, as set forth in the PSI report.

At the close of evidence, the State argued for the court to impose a twenty-five year to life sentence—the maximum permitted under the plea agreement. The State described the killing of Mr. Vreeland as a premeditated murder that was committed in direct violation of an abuse-prevention order, in front of petitioner's teenage son, and for which petitioner had shown no remorse. In support of the premeditation argument, the State argued that petitioner was "obsessed" with the belief that Mr. Vreeland had "stole everything" from petitioner including his wife, his home, his hard-earned money, and his children. Pl.'s Exh. 4 at 74:1-10. The State also detailed petitioner's extensive history of domestic abuse and criminality, his repeated threats against Mr. Vreeland, and his continued harassment of his family following the murder.

Attorney Hatt argued for the minimum permitted sentence of twenty years to life, all suspended except for ten years to serve. Attorney Hatt's argument focused on petitioner's chronic and debilitating alcoholism and his intoxication at the time of killing as mitigating factors. Attorney Hatt pushed back against any suggestion that petitioner presented an irredeemable threat to public safety because of his "history of trauma and alcoholism," and argued that petitioner's likelihood of future aggressiveness was greatly reduced because of his sobriety since being incarcerated. Attorney Hatt also disputed the State's theory of premeditation and argued that there was no evidence that petitioner had any specific plan to kill Mr. Vreeland, but that petitioner simply lost control when Mr. Vreeland unexpectedly approached him on the day of the murder.

3

After a short recess, the court sentenced petitioner to twenty years to life. The court noted that this was understood as the presumptive sentence for second-degree murder and concluded that, by itself, represented a fair punishment for petitioner's crime.[2] The court then considered various aggravating and mitigating factors and found several applicable. With respect to aggravating factors, the court noted that the murder violated both a relief-from-abuse order and a prohibition on firearm possession. The court further found that petitioner blamed Mr. Vreeland for his problems and spent years stewing in hatred and thinking about killing Mr. Vreeland, but the court declined to find that petitioner had formed any specific plan to kill Mr. Vreeland. The court determine this degree of premeditation was "some aggravation." Pet.'s Exh. 4, at 125:14-16. The court additionally found that petitioner's history of alcoholism had "substantial mitigating effect" and was "just a terrible thing on his back," but was not "sufficient to obviate the need for punishment, in this particular case, given the aggravating factors." *Id.* at 125:17-25. The court accordingly sentenced defendant to twenty years to life.

Petitioner filed this action for post-conviction relief in March 2021. As amended, the petition alleges that defense counsel was ineffective for failing to present mitigation evidence at the sentencing hearing from petitioner's sister Terri Mayer, and for failing to investigate allegations that Mr. Vreeland sexually abused petitioner's daughters Rebecca and Sarah Ray and that petitioner was aware of the abuse when he killed Mr. Vreeland.

## Conclusions of Law

"Post-conviction relief is a limited remedy. *State v. Bristol*, 159 Vt. 334, 337, 618 A.2d 1290, 1291 (1992) (citing 13 V.S.A. § 7131). "In order to obtain it, a petitioner is required to establish, by a preponderance of the evidence, that fundamental errors rendered his conviction defective." *Id.* As noted above, petitioner claims the fundamental error in his criminal case was the ineffective assistance of counsel in investigating and presenting mitigation evidence.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This right includes the right to "effective assistance of counsel," *Garza v. Idaho*, 586 U.S. 232, 237 (2019) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)), and applies in state criminal prosecutions by virtue of the Fourteenth Amendment's Due Process Clause, *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963). This implies a right to effective counsel that provides "the assistance necessary to justify reliance on the outcome of the proceeding." *In re Kolts*, 2024 VT 1, ¶ 14, 218 Vt. 565 (quoting *Strickland*, 466 U.S. at 692). "Because the focus of the inquiry is on the outcome of the proceeding, a petitioner asserting

---

[2] The court referenced 13 V.S.A. § 2303, which provides that "[t]he punishment for murder in the second degree shall be imprisonment for: (A) a minimum term of not less than 20 years and a maximum term of life; or (B) life without the possibility of parole."

ineffective assistance of counsel must show not only that counsel's performance was deficient, but also that there is a reasonable probability that, but for counsel's unprofessional errors, the proceedings would have resulted in a different outcome." *Id.* (citations and quotations omitted); *see also Garza*, 586 U.S. at 237 (To establish ineffective assistance of counsel, defendant "must prove (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that any such deficiency was prejudicial to the defense." (quotations omitted)).[3]

Petitioner's claim fails because he cannot show prejudice. As noted above, to establish prejudice under *Strickland*, petitioner must show that there is a "reasonable probability" that, but for defense counsel's unprofessional errors, the outcome of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *In re Sharrow*, 2017 VT 69, ¶ 9, 205 Vt. 309 (quoting *Strickland*, 466 U.S. at 694). There is no reasonable probability that petitioner would have received a more lenient sentence had defense counsel called Terri Mayer as a witness or presented evidence that petitioner killed Mr. Vreeland to avenge the sexual abuse of his daughters.

With respect to Ms. Mayer, her statements concerning petitioner's traumatic childhood were included in the PSI report, and petitioner's childhood trauma was referenced by Judge Bent at the sentencing hearing. Attorney Sleigh credibly testified at the bench trial that defense counsel made a strategic decision not to call Ms. Mayer as a witness because of concerns about her credibility, in particular her theory that petitioner's children intentionally provoked petitioner to kill Mr. Vreeland and her efforts to contact other witnesses in the case. Given counsel's focus on petitioner's alcoholism, which was accepted by the court as a substantial mitigating factor, it is difficult to see how Ms. Mayer's testimony—given the risks involved on cross-examination—would have resulted in the court imposing a lesser sentence.

Likewise, the court cannot accept petitioner's argument that defense counsel should have presented evidence that petitioner knew that Mr. Vreeland had sexually abused his daughters. At the time of sentencing, neither Rebecca nor Sarah had made any claim of sexual abuse that reasonably should have prompted further investigation. Both were interviewed in connection with the PSI and Rebecca was called by the State to testify at sentencing. Neither claimed to have been abused by Mr. Vreeland. But if even they had,

---

[3] The Vermont Constitution separately guarantees "[t]hat in all prosecutions for criminal offenses, a person hath a right to be heard by oneself and by counsel." Vt. Const., ch. 1, art. 10. The parties rely on cases applying the federal *Strickland* standard and has not argued (nor has the Vermont Supreme Court held) that the Vermont Constitution provides different or greater protections in this context. Accordingly, the court will analyze petitioner's claim under the *Strickland* standard. *See Lowell v. Dep't for Child. & Fams.*, 2024 VT 46, ¶ 25, 219 Vt. 563 (declining to consider state constitutional claim where plaintiff failed to set forth any rationale for applying different or greater protections under the state constitution).

and were called to testify about that abuse at sentencing, such evidence only would have further supported a conclusion that the killing was part of a premeditated plan, a conclusion the State vigorously argued and defense counsel strenuously resisted. The sentencing court found evidence of premeditation insofar as petitioner had repeatedly thought and talked about killing Mr. Vreeland but declined to find that petitioner had made a specific plan, as the State had argued. The court accordingly concluded the evidence of premeditation merited only "some aggravation." There is no reasonable probability that the court would have imposed a lesser sentence had it been presented with additional, more compelling evidence of premeditation.

## Order

The petition for post-conviction relief is DENIED.

Electronically signed on: 1/29/2026 pursuant to V.R.E.F. 9(d)

_____
Benjamin D. Battles
Superior Court Judge